**Nicole NUNN, Plaintiff–Appellant,**

v.

**MID–CENTURY INSURANCE COMPANY, a California corporation; Michelle Solich; Doug Compton; Frank Crow; and Bud Cole, Defendants–Appellees.**

No. 06CA0954.

Colorado Court of Appeals,
Div. II.

Dec. 11, 2008.

Rehearing Denied Feb. 5, 2009.

Ogborn, Summerlin & Ogborn L.L.C., Murray Ogborn, Thomas Neville, Denver, Colorado, for Plaintiff–Appellant.

White and Steele, P.C., John P. Craver, John M. Lebsack, Denver, Colorado, for Defendants–Appellees.

Roberts Levin Rosenberg, P.C., Bradley A. Levin, Denver, Colorado, for Amicus Curiae.

Opinion by Judge J. JONES.

This is an insurance bad faith action. Plaintiff, Nicole Nunn, the assignee of the insured, Bryan James, appeals the district court's summary judgment against her and in favor of the insurer, Mid–Century Insurance Company.

The district court entered summary judgment because it concluded that James had not assigned any actual damages to Nunn. Though James purported to assign a claim for the unpaid portion of a judgment in excess of policy limits to which he and Nunn had stipulated before trial, because Nunn simultaneously covenanted not to execute on that stipulated judgment, the district court reasoned that James did not face any actual exposure to the stipulated excess judgment. We agree with the district court's reasoning, and therefore we affirm.

## I. Background

James was the driver of an automobile involved in a single-car accident in July 1999. Nunn was one of five teenage passengers in the car. She suffered severe injuries, including a broken back, resulting in paralysis from the waist down. It appears to have been undisputed at all relevant times that James was at fault. Mid–Century admitted coverage from the outset and recognized, in internal documents, that the accident was "a case of aggravated liability" from which Nunn's damages could be between $2,000,000 and $5,000,000.

In September 2000, Mid–Century filed an interpleader action and deposited $300,000, the limit of its per occurrence liability under the insurance policy, in the court's registry. Mid–Century named all five passengers as parties, but did not serve Nunn, ostensibly because she lived in Florida and her attorney would not accept service on her behalf. Mid–Century settled with the other four passengers, paying them a total of $200,000 in return for releases from liability. Mid–Century retained $100,000, the limit of its liability to any single injured party under the insurance policy, to resolve Nunn's claim.

In November 2000, following unsuccessful efforts to settle with Mid–Century in excess of the policy limit, Nunn filed a lawsuit against James in federal court in Colorado. Mid–Century provided James a defense at its own expense, as required by the insurance policy. Nunn and James reached a settlement in August 2002, prior to trial. The following terms of that settlement agreement are relevant to the issue in this appeal:

- James, through Mid–Century, would pay Nunn $100,000.
- James and Nunn agreed that Nunn's damages as a result of the accident were $4,000,000.
- James assigned to Nunn all claims he might have against Mid–Century for "the unpaid portion of the judgment...."

- Nunn agreed "not to record, execute on or otherwise attempt to enforce the judgments [sic] entered against James … so long as James reasonably performs his obligations under [the settlement agreement] in good faith."
- James agreed to cooperate in a reasonable manner with Nunn and her attorneys in the prosecution of the bad faith suit against Mid–Century.
- Nunn would file a satisfaction of judgment even if she did not succeed in her bad faith suit against Mid–Century.
- The agreement stated: "Nothing in this agreement shall be construed as a release of any claim or party."

James sought and obtained Mid–Century's consent to enter into the settlement agreement, as required by the terms of the insurance policy to preserve James's coverage. Mid–Century's letter to Nunn's counsel stated: "Though Mid–Century … is not a party to [the settlement agreement], we are granting … James permission to enter the agreement as drafted." Mid–Century did not indicate that it agreed to the stipulated judgment or to pay any part of it.

Mid–Century paid Nunn $100,000 on James's behalf as contemplated by the settlement agreement. The federal court entered the stipulated judgment against James in the amount of $4,000,000, and dismissed Nunn's suit.

Nunn then filed this action against Mid–Century, claiming, as relevant here, that Mid–Century had breached its contractual duty to act in good faith toward James by failing to settle her case against him. As noted, the district court granted summary judgment for Mid–Century on the ground James did not suffer any recoverable damages by virtue of Mid–Century's failure to settle because he "faces no personal exposure under the settlement agreement" for the excess judgment.

## II. Discussion

### A. An Essential Element of Nunn's Claim Is That James Suffered Actual Damages

■ Colorado recognizes a cause of action in tort for an insurer's bad faith breach of its obligations under its contract with its insured. *Goodson v. Am. Std. Ins. Co.*, 89 P.3d 409, 414 (Colo.2004); *Vaughan v. McMinn*, 945 P.2d 404, 406 (Colo.1997); *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138, 1141 (Colo.1984). The basis for such tort liability "is grounded upon the special nature of the insurance contract and the relationship which exists between the insurer and the insured." *Trimble*, 691 P.2d at 1141; *accord Goodson*, 89 P.3d at 414–15. This relationship, however, is not "a true fiduciary relationship …, but only a 'quasi-fiduciary' relationship when handling third-party claims." *Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 151 (Colo.2007).

■ The insurer's duty to its insured to act in good faith includes the obligation to act reasonably in the payment and settlement of claims. *Goodson*, 89 P.3d at 415; *Trimble*, 691 P.2d at 1142. Thus, an insurer that unreasonably refuses to settle a claim against its insured, or unreasonably delays in settling such a claim, may be liable to its insured for bad faith breach of the insurance contract. *See, e.g., Trimble*, 691 P.2d at 1138.

■ Recovery of damages for the tort of bad faith breach of an insurance contract is "based upon traditional tort principles of compensation for injuries *actually* suffered…." *Ballow v. PHICO Ins. Co.*, 878 P.2d 672, 677 (Colo.1994) (emphasis in original); *accord Herod v. Colo. Farm Bureau Mut. Ins. Co.*, 928 P.2d 834, 837 (Colo.App. 1996); *see also Goodson*, 89 P.3d at 415. Actual damages are an essential element of a claim for bad faith breach of an insurance contract, which the insured must prove by a preponderance of the evidence. *Goodson*, 89 P.3d at 415. Colorado law on this point is therefore consistent with the "fundamental maxim of the Anglo–American tort law that a wrong without damage … is not actionable …." 1 Stuart M. Speiser, Charles F. Krause & Alfred W. Gans, *The American Law of Torts* § 1:11 (1983); *see also* Restatement (Second) of Torts §§ 903, 912 cmt. a (1979).

■ The fact of actual damages must be proved with reasonable certainty. *See Tull*

*v. Gundersons, Inc.,* 709 P.2d 940, 943 (Colo. 1985). The amount of actual damages sought cannot be based on mere speculation or conjecture. *See Western Cities Broadcasting, Inc. v. Schueller,* 849 P.2d 44, 48 (Colo.1993); *Tull,* 709 P.2d at 943.

### B. Damages Recoverable for Bad Faith Breach of an Insurance Contract

▆▆ Where an insurer has breached its obligation to act in good faith, "[c]ompensatory damages for economic and non-economic losses are available *to make the insured whole* and, where appropriate, punitive damages are available to punish the insurer and deter wrongful conduct by other insurers." *Goodson,* 89 P.3d at 415 (emphasis added). Economic compensatory damages may include, among other things: (1) a judgment within policy limits payable by the insured to a victim where the insurer has unreasonably denied coverage or refused to settle; (2) a judgment in excess of policy limits payable by the insured to the victim where the insurer has unreasonably denied coverage or refused to settle; (3) attorney fees and costs incurred by the insured in defending against the victim's claim where the insurer has unreasonably refused to provide the insured a defense; and (4) damage to an insured's credit caused by the recording of the victim's judgment against the insured where the insurer has unreasonably denied coverage or refused to settle. *See* 1 Allan D. Windt, *Insurance Claims and Disputes* §§ 4:33–4:35, 5:17, 5:21, 6:39, 6:40 (4th ed.2006) (hereinafter, Windt); William M. Shernoff, Sanford M. Gage & Harvey R. Levine, *Insurance Bad Faith Litigation* §§ 3:08[1]-[3], 7:04[3] (1992) (hereinafter, Shernoff).

▆▆ Noneconomic compensatory damages recoverable for the insurer's bad faith breach "include emotional distress; pain and suffering; inconvenience; fear and anxiety; and impairment of the quality of life." *Goodson,* 89 P.3d at 415; *see also* Shernoff, §§ 3.08[4], 7:04[2]. These types of damages may be incurred by an insured where the insurer acted in bad faith by denying coverage, failing to settle or unreasonably delaying in settling, or refusing to provide a defense for the insured.

▆▆ In Colorado, punitive damages are not recoverable in the absence of actual (i.e., compensatory) damages. *See* § 13–21–102(1)(a), C.R.S.2008; *White v. Hansen,* 837 P.2d 1229, 1236 (Colo.1992); *Palmer v. A.H. Robins Co., Inc.,* 684 P.2d 187, 213–14 (Colo. 1984). Thus, in the context of a claim for bad faith breach of an insurance contract, the insured must prove compensatory damages as a threshold matter before punitive damages may be awarded.

### C. Assignment of Bad Faith Claims in Colorado

In *Northland Ins. Co. v. Bashor,* 177 Colo. 463, 494 P.2d 1292 (1972), *aff'g* 29 Colo.App. 81, 480 P.2d 864 (1970), a victim of an automobile accident sued the driver and obtained a judgment of $18,000, an amount in excess of the limit of the driver's automobile insurance policy. The insurer subsequently paid the victim $10,000, leaving $8,000 of the personal judgment against the driver unpaid. After the victim took action to collect the $8,000 balance, the driver and the victim entered into a settlement whereby the driver agreed to pay the victim $1,500, to sue the insurer for the $8,000, and to share with the victim the proceeds of a recovery against the insurer. In return, the victim agreed not to collect on her judgment against the driver and to file a satisfaction of judgment upon payment from the insurer or the entry of a final judgment in the driver's case against the insurer. *Id.* at 464–65, 494 P.2d at 1293.

The driver then sued the insurer for bad faith, claiming the insurer had unreasonably refused to settle the victim's claim for an amount within the policy limit. The insurer moved to limit the driver's potential recovery to $1,500, arguing that the driver had, through his agreement with the victim, essentially obtained a satisfaction of the judgment against him. The district court granted that motion and subsequently dismissed the case for failure to join an indispensable party (the victim). *Id.* at 464–66, 494 P.2d at 1293.

On appeal, a division of this court held, as relevant here, that the judgment against the driver had not been satisfied because the

driver had not exhausted his legal remedies against the insurer, as required by the agreement between the driver and the victim, and because an award of $1,500 would not have made the driver whole under the distribution formula of the agreement absent a recovery against the insurer of the full $8,000. 29 Colo.App. at 85–86, 480 P.2d at 867. On certiorari review, the Colorado Supreme Court adopted the Court of Appeals' reasoning. 177 Colo. at 466, 494 P.2d at 1294.

The term *"Bashor* agreement" has since "been used to describe agreements whereby the insured formally assigns its claims against the insurer to the [victim] in exchange for a covenant not to execute on the insured's assets." *Old Republic Ins. Co. v. Ross,* 180 P.3d 427, 431 (Colo.2008) (citing *Pham v. State Farm Mut. Auto. Ins. Co.,* 70 P.3d 567, 570 (Colo.App.2003); *Pike v. Am. States Preferred Ins. Co.,* 55 P.3d 212, 213 (Colo.App.2002); and *Rodriguez v. Safeco Ins. Co.,* 821 P.2d 849 (Colo.App.1991)). This understanding has persisted, despite the fact there was no such assignment in *Bashor.*

In *Ross v. Old Republic Ins. Co.,* 134 P.3d 505 (Colo.App.2006), a division of this court held that a purported *Bashor* agreement entered into before a judgment was obtained against the insured was not a valid *Bashor* agreement. *Id.* at 511–12. The supreme court granted certiorari on the following question: "Whether the court of appeals' holding that the settlement was not a valid *Bashor* agreement conflicts with the supreme court's decision in *Northland Ins. Company v. Bashor,* 177 Colo. 463, 494 P.2d 1292 (1972)." *Old Republic,* 180 P.3d at 430 n. 1. The supreme court affirmed the court of appeals on this issue, holding, "[U]nder the facts of this case, where the insurer has conceded coverage and defended its insured, and where there has been no finding of bad faith against the insurer, a stipulated judgment entered before trial, to which the insurer is not a party, cannot be enforced against the insurer." *Id.* at 428; *see also id.* at 432, 434. In reaching that holding, however, the court "decline[d] to hold that pretrial stipulated judgments are per se unenforceable under *Bashor." Id.* at 433.

It is therefore clear after the supreme court's decision in *Old Republic* that the mere fact that a *Bashor* agreement is entered into before a trial between the victim and the insured does not necessarily render that agreement unenforceable against the insurer. However, the supreme court in *Old Republic* did not address the issue raised in this case—whether such a pretrial agreement containing a covenant not to execute is enforceable notwithstanding that the excess stipulated judgment constitutes the only "damages" purportedly assigned. More simply put, the question here is whether James assigned any actual damages at all. We turn now to that question and answer "no."

### D. James Did Not Assign Any Actual Damages to Nunn

■ As noted, James assigned to Nunn "the unpaid portion of the judgment." James did not purport to assign to Nunn any other economic damages or any noneconomic damages, and Nunn does not contend otherwise. As James's assignee, Nunn stands in no better position than James with respect to establishing the necessary elements of a bad faith claim. *See Tivoli Ventures, Inc. v. Bumann,* 870 P.2d 1244, 1248 (Colo.1994) ("As a general principle of common law, an assignee stands in the shoes of the assignor."); *see also Dean Witter Reynolds Inc. v. Variable Annuity Life Ins. Co.,* 373 F.3d 1100, 1110 (10th Cir.2004) (applying Colorado law).

In *Serna v. Kingston Enterprises,* 72 P.3d 376 (Colo.App.2002), a division of this court held that an employee could not maintain an action for indemnity against her employer because, by virtue of obtaining a covenant not to execute on a judgment against her, she had not suffered any damages. The employee was driving a car at her employer's direction when she collided with another car. The passengers in the other car were injured, and they filed suit against both the employee and her employer. Shortly after the passengers filed suit, they settled with the employee. The employee agreed to pay the passengers $40,000 toward a stipulated judgment of $1,500,000, to sue her employer for the excess judgment, and to pay all or part of any recovery from her employer to

the passengers (depending on the amount recovered). In return, the passengers agreed not to execute on the remainder of the judgment against the employee. *Id.* at 378.

The district court granted summary judgment in the employer's favor on grounds not relevant here. On appeal, the division affirmed the summary judgment "because there is no realistic prospect of the passengers executing on the judgment . . ." *Id.* at 380. The division reasoned that because the employee had not paid the judgment, and there was no reason to believe she ever would, she had not been damaged. *Id.*

Nunn attempts to distinguish *Serna* on the basis that it involved an indemnity claim, not a claim for bad faith breach of an insurance contract. She relies on the source and nature of the duty an insurer owes to its insured.

Nunn's attempt to distinguish *Serna* does not withstand scrutiny, for at least three reasons. First, the division's holding in *Serna* was not based on any unique aspect of the source or nature of the duty to indemnify. Rather, it was based expressly on the rule an indemnity claim may not be maintained unless the claimant has incurred damages, " 'either through payment of a sum clearly owed or through the injured party's obtaining an enforceable judgment.' " *Id.* (quoting *Perry v. Pioneer Wholesale Supply Co.,* 681 P.2d 214, 218 (Utah 1984)); *see Am. Mfrs. Mut. Ins. Co. v. Seco/Warwick Corp.,* 266 F.Supp.2d 1259, 1268 (D.Colo.2003) (applying *Serna* to an insurance bad faith claim). As discussed above, a claim for bad faith breach of an insurance contract cannot be maintained in the absence of actual damages. In this respect, an indemnity claim and a bad faith claim do not differ.

Second, Nunn's reliance on the nature of the relationship between the parties conflates the elements of wrongful conduct and damages. To maintain a tort action it is not enough to establish that a tortfeasor, even one owing quasi-fiduciary duties to another, has behaved in violation of its duties. As discussed above, no action may be maintained against the tortfeasor absent actual damages proximately caused by the violation of those duties. *See Goodson,* 89 P.3d at 415.

Third, the concerns faced by James in the event he proceeded to trial were the same as those faced by the employee in *Serna.* Both faced the prospect of immense liability and the consequences flowing therefrom. However, in both cases the prospective liability for an excess judgment never materialized (and would never materialize) because of the respective settlements. A *prospect* of damages is not actual damages. While the prospect of incurring certain damages may cause an insured to incur certain noneconomic damages (such as emotional distress), it is undisputed here that James did not assign any such damages to Nunn.

In *Old Republic,* the court noted the division's holding in *Serna,* but concluded that it presented different circumstances from those in the case before it. *Old Republic,* 180 P.3d at 432 & n. 4. The court did not overrule *Serna,* and did not address the essential rationale of that decision.

In *Hamilton v. Maryland Casualty Co.,* 27 Cal.4th 718, 117 Cal.Rptr.2d 318, 41 P.3d 128 (2002) (cited with approval in *Old Republic,* 180 P.3d at 433–34), a unanimous California Supreme Court held that where (1) a victim and an insured enter into a stipulated judgment before trial that the victim agrees not to attempt to collect from the insured, (2) the insured assigns its bad faith claim to the victim, and (3) the insurer has not actually agreed to pay the judgment, "the [victim] may not maintain an action for breach of the duty to settle because . . . the stipulated judgment is insufficient to prove that the insured suffered any damages from the insurer's breach of its settlement duty." *Id.,* 117 Cal.Rptr.2d 318, 41 P.3d at 130. The court reasoned that in such circumstances, "the agreed judgment cannot fairly be attributed to the insured's conduct, even if the insurer's refusal to settle . . . was unreasonable." *Id.,* 117 Cal.Rptr.2d 318, 41 P.3d at 137.

Here, though Mid–Century chose to allow James to enter into the settlement agreement, it was not a party to that agreement and it expressly did not agree to the stipulated judgment. Further, James could be

subjected to personal exposure on the excess judgment only if he breached his (very limited) obligations under the settlement agreement. In that unlikely event, James would be damaged because of his own fault, not any fault of Mid–Century. Thus, the remote possibility Nunn could enforce the judgment against James is both quantitatively and qualitatively insufficient to say the excess judgment constitutes damages caused by Mid–Century's tortious conduct.

A significant number of courts in other jurisdictions have held—as the California Supreme Court did in *Hamilton*—that in circumstances such as those in this case, there are no actual damages arising from the insurer's alleged conduct. *E.g., Mercado v. Allstate Ins. Co.,* 340 F.3d 824, 825, 826–27 (9th Cir.2003) (applying California law); *Foremost County Mut. Ins. Co. v. Home Indemnity Co.,* 897 F.2d 754, 757–59 (5th Cir.1990) (applying Texas law); *Clement v. Prudential Property & Cas. Ins. Co.,* 790 F.2d 1545, 1547–48 (11th Cir.1986) (applying Florida law); *In re Tutu Water Wells Contamination Litigation,* 78 F.Supp.2d 423, 431–34 (D.Vi.1999) (applying Virgin Islands law); *Willcox v. American Home Assurance Co.,* 900 F.Supp. 850, 857–59 (S.D.Tex.1995) (applying Texas law); *Miller v. Shugart,* 316 N.W.2d 729, 732, 734 & n. 5 (Minn.1982); *Stubblefield v. St. Paul Fire & Marine Ins. Co.,* 267 Or. 397, 517 P.2d 262, 263–64 (1973); *Strahin v. Sullivan,* 220 W.Va. 329, 647 S.E.2d 765, 770–73 (2007) (observing that there is no published case from any jurisdiction "in which a third party has been entitled to recover against an insurer in excess of policy limits pursuant to a pretrial consent judgment which included an assignment coupled with a covenant not to execute"); *cf. Lida Mfg. Co., Inc. v. United States Fire Ins. Co.,* 116 N.C.App. 592, 448 S.E.2d 854, 856–57 (1994) (covenant not to execute rendered insured not "legally obligated to pay damages" within meaning of insurance policy, and therefore insurer was not liable for consent judgment).

Some of these cases also address and reject as practically meaningless the distinction urged here by Nunn between a release and a covenant not to execute. Though an excess judgment is a type of compensatory damages, if the victim has agreed not to execute on that judgment against the insured, the insured has not, in any real sense, incurred a liability as a result of the insurer's conduct for which he or she needs to be compensated *in order to be made whole. See Clement,* 790 F.2d at 1548; *In re Tutu Water Wells Contamination Litigation,* 78 F.Supp.2d at 433–34; *Strahin,* 647 S.E.2d at 771–72.

Therefore, we disagree with Nunn that it matters here that the settlement agreement contained a provision stating: "Nothing in this Agreement shall be construed as a release of any claim or party." The agreement expressly provides that Nunn will not execute against James, and Nunn concedes the parties' intent was that James would not have to pay the judgment. Thus, the disclaimer in the agreement is plainly nothing more than an attempt to preserve Nunn's ability to argue the technical distinction between a release and a covenant not to execute.

One prominent commentator in this field has referred to the decisions denying recovery in these circumstances as expressing the "better rule," Windt, § 5:20, at 554, and we agree with that assessment. This rule is consistent with fundamental principles applicable to the recovery of compensatory damages proximately caused by the tort of another.

Nunn cites a number of cases which she contends have resolved this issue in her favor. However, none of the cases on which Nunn relies involved the precise circumstances here, where: (1) the insurer never denied coverage; (2) the insurer never refused to provide the insured a defense; (3) the insurer agreed to pay policy limits from the outset; (4) the settlement agreement was entered into before any finding by a finder of fact as to liability or damages; (5) the judgment was one to which the victim and the insured stipulated; (6) the stipulated judgment is in excess of the policy limit; and (7) under the terms of the settlement agreement, it was virtually certain that the victim would not attempt to collect the excess judgment from the insured. *See Strahin,* 647 S.E.2d at 770–73, 778–93 (majority opinion

and opinion of Davis, C.J., concurring, collecting and discussing cases).

For example, in the leading case of *Damron v. Sledge*, 105 Ariz. 151, 460 P.2d 997 (1969), the insurance companies had refused to provide a defense for the insured driver on the theory the driver was driving the insured vehicle without permission. The driver assigned the bad faith claim to the accident victim in return for an agreement not to execute. The court's opinion makes clear the driver suffered damages in the form of attorney fees he incurred as a result of the insurer's refusal to provide him a defense. *Id.* at 998–99.

In *Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524 (Iowa 1995), another frequently cited case, the insurer had both denied coverage and refused to provide the insured a defense. Again, the insured suffered and assigned actual damages.

The decisions on which Nunn relies are most frequently grounded on a distinction between a release and a covenant not to execute. These courts reason that, unlike a release, a covenant not to execute does not extinguish the underlying liability for the damages. *See, e.g., Red Giant Oil Co.*, 528 N.W.2d at 529–33; *Tip's Package Store, Inc. v. Commercial Ins. Mgrs., Inc.*, 86 S.W.3d 543, 555 (Tenn.Ct.App.2001). As discussed above, while this distinction is technically correct, we conclude that it does not make a difference in this context.

The courts that have decided the cases on which Nunn relies also frequently opine that allowing an assignee to recover the excess judgment (or some reasonable portion thereof) in similar circumstances serves the salutary purpose of allowing insureds to protect themselves from the consequences of wrongful behavior by their insurers. *See, e.g., Damron*, 460 P.2d at 999. Indeed, this rationale for not invalidating all pretrial *Bashor* agreements was recognized by the supreme court in *Old Republic*. *See Old Republic*, 180 P.3d at 433–34. However, when this rationale is used to justify recovery against an insurer on a stipulated excess judgment in circumstances similar to those here, it improperly conflates the issues of wrongful conduct and damages resulting therefrom. An insurer's wrongful conduct may put an insured in the position of facing *potential* liability for damages in excess of policy limits. However, having fully protected himself or herself by virtue of obtaining the covenant not to execute on the excess judgment, the insured has eliminated his or her personal exposure and, ipso facto, suffered no such compensatory damages for the excess judgment (though, as discussed above, other types of damages may have been incurred).

Finally, we reject Nunn's argument that the supreme court's decision in *Trimble* supports her position. In *Trimble*, the court rejected the argument that "absent actual exposure of an insured to a judgment in excess of policy limits, there can be no breach of the duty of good faith by the insurer." *Trimble*, 691 P.2d at 1142. The court relied on *Berry v. United of Omaha*, 719 F.2d 1127 (11th Cir.1983), in making this point. In *Berry*, the court, applying Alabama law, held that nonpayment of a claim is not an essential element of the tort of bad faith refusal to settle because *other* damages, specifically, damages for mental distress, are recoverable for the commission of that tort. *Id.* at 1128–29. In *Trimble* itself, the insured sought only damages for "attorney fees, expenses, and costs; severe emotional distress; loss of sleep; and impairment of credit rating." *Farmers Group, Inc. v. Trimble*, 658 P.2d 1370, 1374 (Colo.App.1982), *aff'd*, 691 P.2d 1138 (Colo.1984). Thus, *Trimble* cannot be read to stand for the proposition that an excess judgment is always recoverable against the insurer where the insured has obtained a covenant not to execute. Indeed, it is properly read as holding that the *absence* of that type of damages does not preclude the maintenance of a bad faith claim because *other* damages may be caused by the insurer's conduct and are recoverable. Here, however, James assigned to Nunn only "damages" for the excess judgment.

### III. Conclusion

In sum, James did not assign any actual damages to Nunn. Regardless of the allegedly wrongful nature of an insurer's conduct, we cannot effectively dispense with the fundamental requirement that a party show ac-

tual damages to maintain a bad faith claim. Accordingly, we conclude that the district court did not err in granting summary judgment in Mid–Century's favor.

The judgment is affirmed.

Judge FURMAN and Judge METZGER * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.