Nicole NUNN, Petitioner

v.

MID–CENTURY INSURANCE COM-
PANY, a California Corporation,
Respondent.

No. 09SC195.

Supreme Court of Colorado,
En Banc.

Nov. 22, 2010.

As Modified on Denial of Rehearing
Jan. 10, 2011.*

* Justice Rice, Justice Coats, and Justice Eid would grant the Petition. Justice Marquez does not participate.

Ogborn, Summerlin & Ogborn, LLC, Murray Ogborn, Thomas Neville, Roberts Levin Rosenberg, P.C., Bradley A. Levin, Michael J. Rosenberg, Denver, Colorado, Lefferts Mabie, P.A., Lefferts L. Mabie, III, Tampa, Florida, Attorneys for Petitioner.

White and Steele, P.C., John P. Craver, John M. Lebsack, Lyndsay K. Arundel, Denver, Colorado, Attorneys for Respondent.

Taffet Law, P.C., Steven Taffet, Boulder, CO, Attorney for Amicus Curiae The Colorado Trial Lawyers Association.

Spies, Powers & Robinson, P.C., Jack D. Robinson, Denver, CO, Attorney for Amicus Curiae Colorado Defense Lawyers Association.

Hall & Evans L.L.C., Alan Epstein, Denver, CO, Attorney for Amicus Curiae American Insurance Association.

Justice MARTINEZ delivered the Opinion of the Court.

## I. Introduction

This case concerns the pretrial dismissal of a claim of bad faith breach of an insurance contract brought by petitioner Nicole Nunn ("Nunn"), as assignee of the insured, Bryan James ("James"), against James's insurer, Mid–Century Insurance Company ("Mid–Century"). James assigned his claims to Nunn pursuant to a settlement agreement involving a pretrial stipulated judgment coupled with a covenant not to execute.[1]

In this appeal, Nunn is seeking reversal of the court of appeals' judgment in *Nunn v. Mid–Century Ins. Co.,* 215 P.3d 1196 (Colo. App.2008). The court of appeals determined that Nunn, as James's assignee, could not demonstrate actual damages because James would never face personal exposure to the stipulated judgment by virtue of Nunn's covenant not to execute. *Id.* at 1204–05. Thus, because Nunn could not establish an essen-

---

1. The term "Bashor Agreement" is derived from our case *Northland Ins. Co. v. Bashor,* 177 Colo. 463, 494 P.2d 1292 (Colo.1972), and has since been used to refer to settlement agreements involving a formal assignment of claims against an insurer to a third party and a stipulated judgment coupled with a covenant not to execute. *See generally Old Republic Ins. Co. v. Ross,* 180 P.3d 427, 431 (Colo.2008) (discussing use of the term "Bashor Agreement"). However, due to the significant factual differences between *Bashor* and the present case—*Bashor* did not involve an assignment of claims and was executed after trial, not before—we decline to use the term "Bashor Agreement" to describe Nunn and James's agreement, although we acknowledge that it was designed with regard to the principles laid down in that case.

tial element of the bad faith claim, the court of appeals affirmed the trial court's order granting summary judgment in favor of Mid–Century. *Id.* Because the bad faith claim was dismissed on summary judgment, the sole issue for our determination is whether a pretrial stipulated judgment coupled with a covenant not to execute can serve as the basis for a claim of damages in an action for bad faith breach of an insurance contract. For purposes of this appeal, we must assume that the other elements of a bad faith claim have been established although they remain contested. We conclude that entry of a judgment in excess of liability policy limits, notwithstanding the existence of a covenant not to execute, is sufficient to establish actual damages in a claim alleging bad faith breach of an insurance contract. Therefore, we reverse the judgment of the court of appeals.

## II. Facts and Procedural History

James was the driver of a vehicle carrying five passengers, including Nunn, who were all seriously injured when James lost control of the vehicle and it crashed. As a result of the accident, Nunn was permanently paralyzed from the waist down. Mid–Century immediately conceded coverage and, according to internal documents, eventually appraised Nunn's damages at between $2,000,000 and $5,000,000, far in excess of the policy's $100,000 per person $300,000 per accident liability limits.

Fourteen months after the accident, Mid–Century initiated an interpleader action and deposited the $300,000 per accident limit into the court's registry. Mid–Century named all five passengers as parties; however, Mid–Century claims that it was not able to serve Nunn because she was in Florida, and her attorney would not accept service of process on her behalf. During a settlement conference in the interpleader action, all of the passengers except Nunn settled and released their claims against James for a total of $200,000. Mid–Century designated the remaining $100,000 for resolution of Nunn's claim.

Around this same time, Nunn alleges she made an offer to Mid–Century to settle her claims for the $100,000 policy limit, which she says Mid–Century refused. Mid–Century disputes this, claiming that Nunn never made an offer to settle within the limits of the policy. In any event, Nunn and Mid–Century did not reach a settlement, so Nunn filed suit against James for her personal injuries. Mid–Century defended James at its expense, as required by the insurance policy. Before trial, however, James and Nunn entered into their own settlement agreement.[2] The agreement stated that James would pay over to Nunn the $100,000 policy limit from Mid–Century and stipulate to a judgment in the amount of $4,000,000. James also agreed to assign any claims he had against Mid–Century to Nunn. In exchange, Nunn covenanted not to execute on the stipulated judgment.

Nunn, as assignee, then initiated this bad faith action against Mid–Century, alleging that Mid–Century breached its contractual duty to act in good faith toward James by failing to accept her reasonable settlement offer in the amount of the $100,000 policy limit, which resulted in its insured, James, being exposed to a judgment in excess of his policy limits. The trial court granted Mid–Century's motion for summary judgment on the basis that, by virtue of the covenant not to execute, James would never face personal liability for the excess judgment, and thus there were no damages to assign to Nunn. The court of appeals agreed with the trial court's reasoning and affirmed the grant of summary judgment in favor of Mid–Century, after which time Nunn petitioned this court for certiorari.[3] Because the bad faith claim

---

**2.** Before entering into the agreement, James and Nunn presented Mid–Century with a draft of the proposed agreement. In response, Mid–Century sent a letter to James's attorney granting James permission to enter into the agreement. However, Mid–Century later argued that the letter of consent was merely an acceptance of its responsibility, pursuant to the agreement, to pay the $100,000 policy limit to Nunn and did not serve as its consent to be bound by the stipulated judgment.

**3.** We granted certiorari on the following issue:

Whether the court of appeals erred by holding that a *Bashor* agreement containing a covenant not to execute on the insured's personal assets, given in exchange for the insured's assignment of claims against its liability insurer, precludes

in this case was dismissed on summary judgment, we must determine whether a bad faith claim, otherwise provable, may be dismissed on the sole basis that the presence of a covenant not to execute precludes a stipulated judgment from serving as proof of actual damages.

### III. Discussion

#### A.

■ Although every contract contains an implied duty of good faith and fair dealing, insurance contracts are unlike ordinary bilateral contracts. *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 414 (Colo.2004). Rather than entering into a contract to obtain a commercial advantage, insureds enter into insurance contracts "for the financial security obtained by protecting themselves from unforeseen calamities and for peace of mind...." *Id.* (citing *Farmers Grp., Inc. v. Trimble,* 691 P.2d 1138, 1141 (Colo.1984)). Furthermore, insurance policies generally are not the result of negotiation due to the significant disparity in the bargaining power between the insurer and the insured. *See id.* (citing *Huizar v. Allstate Ins. Co.*, 952 P.2d 342, 344 (Colo.1998)). Therefore, as a result of the " 'special nature of the insurance contract and the relationship which exists between the insurer and the insured,' " in addition to liability for regular breach of contract, an insurer's bad faith breach of an insurance contract also gives rise to tort liability. *Id.* (quoting *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo.2003)).

■ Such bad faith tort liability arises in two contexts: first-party and third-party. *See id.* First-party bad faith occurs when an insurance company delays or refuses to make payments "owed directly to its insured under a first-party policy such as life, health, disability, property, fire, or no-fault auto insurance." *Id.* (citing *Farmers Grp., Inc. v. Williams,* 805 P.2d 419, 421 (Colo.1991)). On the other hand, "[t]hird-party bad faith arises when an insurance company acts unreasonably in investigating, defending, or settling a claim brought by a third person against its insured under a liability policy." *Id.* Al-

though referred to as "third-party bad faith," the insurer's duty of good faith and fair dealing extends only to its insured, not the third party. *See id.* Therefore, the insured must make a formal assignment of its bad faith claims to the third party before the third party can assert such a claim directly against the insurer. *See Tivoli Ventures, Inc. v. Bumann,* 870 P.2d 1244, 1248 (Colo. 1994) ("As a general principle of common law, an assignee stands in the shoes of the assignor."). The present case is an example of a third-party bad faith claim brought by the third party through the use of a formal assignment: Nunn, acting as James's assignee, sued Mid–Century alleging that it acted in bad faith toward its insured, James, by unreasonably failing to settle her personal injury claim within the liability policy limits, which resulted in James's exposure to a judgment far in excess of his policy limits.

■ Typically, the insured, rather than the insurer, is responsible for paying any damages in excess of the amount of liability coverage that the insured purchased. *See Kelly v. Iowa Mut. Ins. Co.*, 620 N.W.2d 637, 644 (Iowa 2000) (noting that an insured pays a set premium for a defined amount of liability protection and is therefore at risk for any amounts in excess of the purchased protection). However, when it appears that the insurer—who has exclusive control over the defense and settlement of claims pursuant to the insurance contract—has acted unreasonably by refusing to defend its insured or refusing a settlement offer that would avoid any possibility of excess liability for its insured, the insured may take steps to protect itself from potential exposure to such liability. *See Old Republic,* 180 P.3d at 433–34; *Bashor,* 177 Colo. at 466, 494 P.2d at 1294. One way for an insured to protect itself is through the use of an agreement whereby the insured assigns its bad faith claims to the third party, and in exchange the third party agrees to pursue the insurer directly for payment of the excess judgment rather than the insured. However, this method raises concerns where, as here, the judgment re-

the insured's assignee from recovering damages against the insurer on the assigned

claims, irrespective of the insurer's bad faith conduct.

sults from a pretrial stipulation between the insured and third party rather than an adversarial proceeding before a neutral factfinder. Under these circumstances, it is possible that the stipulated judgment " 'may not actually represent an arm's length determination of the worth of the plaintiff's claim.' " *Old Republic*, 180 P.3d at 432 (quoting *Miller v. Byrne*, 916 P.2d 566, 581 (Colo.App.1995)). Nevertheless, we have recognized that "[w]here an insurer has wrongfully subjected its insured to an excess judgment, ... the risk of collusion may be tolerable in light of the 'relative positions of the parties.' " *Id.* at 434 (quoting Justin A. Harris, Note, *Judicial Approaches to Stipulated Judgments, Assignments of Rights, and Covenants Not to Execute in Insurance Litigation*, 47 Drake L.Rev. 853, 875 (1999)). Indeed, we have declined to hold pretrial stipulated judgments per se unenforceable because a stipulated judgment might be the insured's "only viable recourse against an insurer that has acted in bad faith." *Id.* at 433. Accordingly, although we have held that a pretrial stipulated judgment cannot be enforced against an insurer in the absence of a determination of bad faith, we have explicitly left the door open for the enforceability of such a judgment in the event that an insured or an assignee of the insured successfully litigates a claim of bad faith. *Id.* at 434.

In *Bashor*, we upheld an agreement between an insured and a third party that contained a covenant not to execute on an excess judgment. 177 Colo. at 466, 494 P.2d at 1294. In that case, the third party sued the insured and obtained a judgment in excess of the insured's liability policy limits. *Bashor*, 177 Colo. at 464, 494 P.2d at 1293. Thereafter, the insured and the third party reached an agreement whereby the insured would pay a portion of the judgment himself and then pursue a bad faith claim for breach of the duty to settle against his insurer. *Bashor*, 177 Colo. at 465, 494 P.2d at 1293. The insured then agreed to pay over any proceeds from the bad faith claim to the third party in satisfaction of the remainder of the judgment. *Id.* In exchange, the third party agreed not to make any further efforts to collect on the judgment from the insured's assets. *Id.* In the subsequent bad faith proceeding, the insurer argued that the insured's recovery should be limited to the amount of the judgment the insured had paid himself because it served as a complete satisfaction of the judgment against him. *Id.* We rejected this argument and allowed the insured to proceed with his bad faith claim against his insurer, holding that the settlement agreement was not "champertous, illegal, void, or contrary to public policy." *Bashor*, 177 Colo. at 466, 494 P.2d at 1294.

Whereas *Bashor* concerned a posttrial agreement involving a covenant not to execute on a judgment determined by a neutral factfinder, in *Old Republic* we reviewed for the first time a pretrial agreement involving a covenant not to execute on a stipulated judgment. *Old Republic*, 180 P.3d at 429. In that case, the injured third parties—surviving spouses and children of victims of an airplane accident—and the insureds—the airplane charter company and its president—entered into a settlement agreement under which the insureds consented to the entry of a stipulated judgment against them in the amount of $5.3 million. *Id.* In return, the third parties covenanted not to execute on the stipulated judgment, and the insureds agreed to pursue claims against their insurer in order to obtain a judgment that they would then pay over to the third parties in satisfaction of the stipulated judgment. *Id.* Pursuant to this agreement, the insureds brought bad faith claims against their insurer but eventually dismissed the claims in order to expedite a declaratory judgment proceeding. *Id.* Thereafter, the third parties attempted to collect postjudgment interest on the stipulated judgment. *Id.* at 429–30. The insurer countered that it could not be liable for the postjudgment interest because the stipulated judgment was not a valid judgment. *Id.* at 431.

Because of the unique procedural posture of *Old Republic*, we had to ascertain the validity of the pretrial agreement in light of the fact that there would never be a determination of the insurer's alleged bad faith. After considering all of the facts of the case, we ultimately concluded that the stipulated judgment was not binding on the insurer. *Id.* at 434. We noted, however, that had the in-

sureds proceeded successfully with any of their bad faith claims against their insurer, or had the third parties successfully litigated any of the bad faith claims against the insurer by means of an assignment of claims, such a pretrial stipulated judgment would have been enforceable against the insurer. *Id.* Thus, although we underscored the necessity of a determination of bad faith, we expressly declined the insurer's invitation to hold all pretrial stipulated judgments per se unenforceable. *Id.* at 433.

### B.

█ In the present case, the court of appeals held that Nunn and James's pretrial agreement involving a stipulated judgment and covenant not to execute was not enforceable against Mid–Century because Nunn, as assignee, could not prove actual damages on her bad faith claim.[4] *See Nunn,* 215 P.3d at 1204–05. The court held that, although James had suffered an excess judgment, by virtue of the covenant not to execute he faced no personal exposure to the judgment and therefore suffered no actual damages; accordingly, he had no damages to assign to Nunn. *Id.* We disagree.

█ Traditional tort principles govern claims for bad faith breach of an insurance contract. *See Goodson,* 89 P.3d at 415. Thus, as with most tort claims, proof of actual damages is an essential element of a bad faith breach of an insurance contract claim. *See id.* However, there are two approaches to the question of whether an excess judgment alone is sufficient to establish actual damages for a claim of bad faith breach of the duty to settle: the judgment rule and the prepayment rule. *See Carter v. Pioneer Mut. Cas. Co.,* 67 Ohio St.2d 146, 423 N.E.2d 188, 190–191 (1981) (discussing both approaches and adopting the judgment rule). The judgment rule is the majority rule, and it states that "entry of judgment in excess alone is sufficient damage to sustain a recovery from an insurer for its breach of duty to act in good faith...." *Id.* at 190; *Gaskill v. Preferred Risk Mut. Ins. Co.,* 251 F.Supp. 66,

69 (D.Md.1966) (noting that "the trend of all the recent decisions is towards the view that payment is not a prerequisite to recovery" in situations where an insurer breaches its duty to settle); *Henegan v. Merchs. Mut. Ins. Co.,* 31 A.D.2d 12, 294 N.Y.S.2d 547, 548 (N.Y.App.Div.1968) ("We join with the majority of jurisdictions in this country in concluding that an insured is damaged, that he has suffered a loss or injury, upon entry of the excess final judgment in the damage suit case."). On the other hand, a decreasing minority of jurisdictions has adopted the prepayment rule, which dictates that "if an insured did not and cannot pay out any money in satisfaction of an excess judgment, the insured was not harmed, and, therefore, the insurer is not to be held responsible for its bad faith...." *Carter,* 423 N.E.2d at 191.

The court of appeals in this case has adopted the minority prepayment rule by holding that a covenant not to execute precludes, as a matter of law, the presence of any actual damages in a bad faith claim because it protects the insured from ever having to pay any portion of the judgment out of pocket. However, an insured entering into a posttrial agreement also protects itself from having to pay the judgment through the use of a covenant not to execute. Thus, the minority prepayment rule adopted by the court of appeals would prevent both pretrial and posttrial agreements. To apply the rule to prevent posttrial agreements, however, is patently inconsistent with *Bashor,* where we specifically upheld a postjudgment agreement containing a covenant not to execute. 177 Colo. at 466, 494 P.2d at 1294.

Moreover, a covenant not to execute is the consideration for the insured's reciprocal agreement to assign its bad faith claims and to allow judgment to be entered against it on the third party's claims. Under the rule announced by the court of appeals, however, the covenant not to execute is without value because, by executing such a covenant, the insured suffers no damages and thus cannot maintain a bad faith claim against its insurer. Accordingly, the third party has no reason to

---

4. In contrast to the procedural posture of *Old Republic,* in the present case, we must assume that the bad faith claim may be successfully litigated against the insurer in all respects other than our focus on proof of actual damages.

bargain for a worthless judgment and will simply continue to pursue its efforts directly against the insured. In turn, the third party will be frustrated in its attempt to collect any judgment against the insured, and insurers will be allowed " 'to play fast and loose with claims against their less affluent policyholders.' " *Moutsopoulos v. Am. Mut. Ins. Co.*, 607 F.2d 1185, 1189–90 (7th Cir.1979) (quoting *Liberty Mut. Ins. Co. v. Davis*, 412 F.2d 475, 485 (5th Cir.1969)). Indeed, the very purpose of *Bashor* and *Old Republic* was to avoid these results, whether caused by a breach of the duty to defend or the duty to settle, by allowing the insured " 'to protect itself by shifting the risk to the breaching insurer without first subjecting itself to potential financial ruin.' " *Old Republic*, 180 P.3d at 433–34 (quoting *Great Divide Ins. Co. v. Carpenter*, 79 P.3d 599, 609 (Alaska 2003)). Thus, the holding of the court of appeals is inconsistent with our recognition that an insured may take affirmative steps to avoid the potentially disastrous effects of its insurer's bad faith. *See id.*

Additionally, the court of appeals' reliance on a California Supreme Court case, *Hamilton v. Maryland Casualty Co.*, 27 Cal.4th 718, 117 Cal.Rptr.2d 318, 41 P.3d 128 (2002), is misplaced. In contrast with the court of appeals, the court in *Hamilton* never held that the mere presence of a covenant not to execute precluded the insured from suffering, and thus assigning, any damages in a bad faith claim. To the contrary, the California Supreme Court stated that the assignment and covenant not to execute would become operative once the judgment was entered following trial. *Id.* at 137 ("As long as the insurer is providing a defense, the insurer is allowed to proceed through trial to judgment. The assignment of the bad faith cause of action becomes operative after the excess judgment has been rendered."). Moreover, although California only recognizes the validity of settlement agreements involving stipulated judgments where an in-

surer breaches its duty to defend, and not when it breaches its duty to settle, *see id.* at 136–37, we have made no such distinction in Colorado. *See Old Republic*, 180 P.3d at 433–34 (requiring only that the insurer be found in breach of a duty to act in good faith toward its insured).

Finally, not only does the prepayment rule conflict with our case law, the approach has been rejected, for good reason, by an increasing majority of jurisdictions. We likewise reject the prepayment rule because, in our view, regardless of whether the insured can or will pay the judgment, entry of a judgment in excess of policy limits harms the insured because it may result in damage to an insured's credit, its ability to successfully apply for loans, or its reputation. *See Carter*, 423 N.E.2d at 191 (citing *Crabb v. Nat'l Indem. Co.*, 87 S.D. 222, 205 N.W.2d 633, 638 (1973)). It may also cause the insured to suffer fear, anxiety, or other emotional distress. *See Goodson*, 89 P.3d at 415 (stating that an insured suing for bad faith breach of an insurance contract is entitled to recover compensatory damages for emotional distress). Furthermore, an insured's ability to pay a judgment should not determine whether the insurer can be held liable for its bad faith conduct toward its insured. *See Carter*, 423 N.E.2d at 191 (" 'Were payment or showing of ability to pay the rule, encouragement would be given to an insurer with an insolvent insured to unreasonably refuse to settle. Such a course would impair the use of insurance for the poor man.' " (quoting *Wolfberg v. Prudence Mut. Cas. Co.*, 98 Ill.App.2d 190, 240 N.E.2d 176, 180 (1968))). As such, we adopt the judgment rule and conclude that an insured who has suffered a judgment in excess of policy limits, even if the judgment is confessed and the insured is protected by a covenant not to execute, has suffered actual damages and will be permitted to maintain an action against its insurer for bad faith breach of the duty to settle.[5] Thus, we hold

---

5. To the degree that the court of appeals reached the opposite result based on its reliance on *Serna v. Kingston Enters.*, 72 P.3d 376 (Colo.App.2002), a case involving a common law indemnity claim, such reliance is inapposite. As we noted in *Old Republic, Serna* involves a number of factual distinctions that reduce its relevance for cases

involving claims for bad faith breach of an insurance contract. *See Old Republic*, 180 P.3d at 432 n. 4. In particular, contrary to a claim for indemnity, which arises when "the liability of the party seeking indemnity results in his damage," *Serna*, 72 P.3d at 380, a claim for bad faith breach of an insurance contract arises at the time the insurer

that the stipulated excess judgment against James was sufficient to establish actual damages as an element of the bad faith claim against Mid–Century. Summary judgment on that basis was therefore improper, and the judgment of the court of appeals is reversed.[6]

We recognize that applying the judgment rule to stipulated judgments presents legitimate concerns regarding the possibility of fraud or collusion, as "the existence and amount of the [insured's] liability is determined by the parties rather than by a neutral factfinder." *Old Republic*, 180 P.3d at 434. Nevertheless, the mere specter of fraud or collusion need not render all stipulated judgments unenforceable against an insurer, because the existence of fraud or collusion can be determined at trial like any other issue of fact. *See Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524, 534 (explaining that "the fear that fraud or collusion is possible" should not be the test of whether a settlement agreement is enforceable because "our system of justice is 'adequately equipped to discern the existence of fraud and collusion'" (quoting *Shook v. Crabb*, 281 N.W.2d 616, 620 (Iowa 1979))). Furthermore, the stipulated judgment will not be binding on the insurer until the insurer has had an opportunity to defend itself at trial. *Old Republic*, 180 P.3d at 434 ("The stipulated judgment thus is not binding on the insurer until after an adversarial proceeding before a neutral factfinder, providing the insurer with an opportunity to advance its defense."). Thus, if Mid–Century chooses to do so, it may assert, as an affirmative defense, that Nunn and James's settlement was the product of fraud or collu-

sion, *see Lawlor*, 528 N.W.2d at 535 (allowing insurer to prove fraud or collusion as a defense), and, if the jury finds that this is so, then the stipulated judgment will not be binding against Mid–Century. *See Miller v. Shugart*, 316 N.W.2d 729, 734 (Minn.1982) (stating that "a money judgment confessed to by an insured is not binding on the insurer if obtained though fraud or collusion").[7]

Moreover, although entry of a stipulated judgment in excess of policy limits is sufficient to establish actual damages for a bad faith failure to settle claim, the actual amount of damages for which an insurer will be liable will depend on whether the stipulated judgment is reasonable. Thus, even if Nunn meets her burden of proving that Mid–Century acted in bad faith, she will have the additional burden of proving that the $4,000,000 stipulated judgment is a reasonable reflection of the worth of her personal injury claims against James, and thus the proper measure of damages for her bad faith claim against Mid–Century. *See Miller*, 316 N.W.2d at 735 (noting that the burden of proof is on the plaintiff to prove that the settlement is reasonable and prudent, which involves a "consideration of the facts bearing on the liability and damage aspects of the plaintiff's claim"). In return, Mid–Century will have the opportunity to prove that the stipulated judgment is not reasonable. If the jury finds that the stipulated judgment is unreasonable, then it may choose to instead award whatever damages, up to the amount of the stipulation, it does find reasonable. *See Six v. Am. Mut. Ins. Co.*, 558 N.W.2d 205, 207 (Iowa 1997) (holding that, even if jury finds that the full amount of the stipu-

---

violates its obligations to protect its insured. *See Trimble*, 691 P.2d at 1142.

**6.** Due to the procedural posture of this appeal, we do not resolve the merits of Nunn's bad faith claim. Mid–Century moved for summary judgment solely on the basis that Nunn could not establish the damages element of her claim for bad faith breach of an insurance contract. As a result, the record has not been established concerning any other aspects of the bad faith claim, including whether Mid–Century breached a duty to James to defend or to settle, as well as whether James had a duty to cooperate and if so, breached that duty. However, for purposes of this appeal, we presume the facts establish bad

faith, as such a presumption favors Nunn as the nonmoving party. *See HealthONE v. Rodriguez ex rel. Rodriguez*, 50 P.3d 879, 887 (Colo.2002) ("In determining whether summary judgment is proper, the nonmoving party is entitled to the benefit of all favorable inferences that may be reasonably drawn from the undisputed facts, and all doubts must be resolved against the moving party.") (citations omitted).

**7.** The trial of the bad faith claim not only presents an adequate opportunity to test the issues of fraud and collusion, it also presents an adequate opportunity to test whether Mid–Century could have prevailed at a trial on liability for the injury and therefore did not breach any duty to James.

lated judgment is not reasonable, insured is allowed to recover the portion of the judgment that is considered reasonable). As such, the particular amount of the stipulated judgment merely serves as evidence of the value of Nunn's claims as bargained for and does not represent the presumptive value of the actual damages in the bad faith case.

## IV.  Conclusion

We hold that entry of judgment in excess of policy limits against an insured is sufficient to establish damages for a bad faith breach of an insurance contract claim against its insurer. Thus, the court of appeals incorrectly affirmed summary judgment on the basis that James had no damages to assign to Nunn. The judgment of the court of appeals is therefore reversed.

Justice EID dissents, and Justice RICE and Justice COATS join in the dissent.

Justice EID, dissenting.

Today, the majority permits an insured, while he is being actively defended by his insurance company against a suit brought by the plaintiff, to stipulate to a $4 million judgment in exchange for a promise from the plaintiff that she will never enforce that judgment against him, but rather pursue a bad faith action against his insurance company to recover the amount of the judgment. From the standpoint of the insured, there is every reason to enter into such an agreement; he avoids substantial personal liability at no cost to himself. But that is precisely why such a stipulated judgment cannot bind the insurer. Indeed, such an agreement violates a bedrock principle of insurance law—namely, that an insured must cooperate with, rather than work against, his insurer while the insurer is actively defending him. Because the majority erroneously upholds the validity of such stipulated judgments, I respectfully dissent.

In Colorado, we have recognized a broad duty to defend: an insurance company must defend where the complaint against the insured "alleges *any* facts that might fall with-

in the coverage of the policy, even if allegations *only potentially or arguably* fall within the policy's coverage." *Thompson v. Maryland Cas. Co.,* 84 P.3d 496, 502 (Colo.2004) (emphasis added) (internal quotation marks and citation omitted). The duty to defend "must be construed liberally with a view toward affording the greatest possible protection to the insured." *Id.* (internal quotation marks and citation omitted). We have explained that an insurer seeking to avoid its duty to defend bears a "heavy burden," which "comports with the insured's legitimate expectation of a defense." *Id.* (internal quotation marks and citation omitted). There is no dispute that the insurance company in this case, Mid–Century, was providing an active defense of its insured, James, at its own expense at the time he entered into the stipulated judgment with the plaintiff, Nunn. Maj. op. at 118.

But this broad duty to defend is accompanied by a corresponding duty on the insured, imposed by an insurance policy's cooperation clause, to cooperate with the insurer in mounting a defense.[1] *Farmers Auto. Inter-Ins. Exch. v. Konugres,* 119 Colo. 268, 275–76, 202 P.2d 959, 962–63 (1949). In fact, an insured may forfeit her insurance coverage if, in violation of a cooperation clause, she fails to cooperate with the insurer "in some material and substantial respect." *Konugres,* 119 Colo. at 276, 202 P.2d at 963 (internal quotation marks and citations omitted). The purpose of a cooperation clause is to "protect the insurer in its defense of claims by obligating the insured not to take any action intentionally and deliberately that would have a substantial, adverse effect on the insurer's defense, settlement, or other handling of the claim." *State Farm Mut. Auto. Ins. Co. v. Secrist,* 33 P.3d 1272, 1275 (Colo.App.2001) (citation omitted). *See also Konugres,* 119 Colo. at 276, 202 P.2d at 963; *Couch on Insurance* § 199:4 (3d ed.2010). For example, an insured violates his duty of cooperation when he fires the insurance company's attorneys and admits that an accident was

1.  The insurance contract at issue here between James and Mid–Century is not part of the record. However, insurance policies generally include a cooperation clause, *see Couch on Insurance*

§ 199:3 (3d ed.2010) (also noting that some states have implied a duty to cooperate as a matter of law), and there is no claim that the insurance policy in this case did not contain one.

his fault and that the injured party suffered damages exceeding $100,000, *Secrist*, 33 P.3d at 1274–75, or when he "fraudulently collude[s] and connive[s] with [the injured party] and her attorneys, to enable her to obtain the judgment against him, in order that he in turn might collect the same for her from [his insurance policy]." *Bagley v. Lumbermens Mut. Cas. Co.*, 99 Colo. 300, 301–02, 62 P.2d 469, 470 (1936). As long as an insurer has agreed to defend its insured, "the insurer retains the absolute right to control the defense of actions brought against the insured, and the insured is therefore precluded from interfering with the investigation and negotiation for settlement." *Farmers Grp., Inc. v. Trimble*, 691 P.2d 1138, 1141 (Colo.1984).

Applying these principles to the stipulated judgment in this case, we should hold that it is not enforceable against Mid–Century because it was entered into while Mid–Century was providing James with a defense. The California Supreme Court came to the same conclusion in *Hamilton v. Maryland Casualty Co.*, 27 Cal.4th 718, 117 Cal.Rptr.2d 318, 41 P.3d 128 (2002), in which it held that an insurer is not bound by an agreement between the plaintiff and defendant insured, entered into while the insurer is defending the insured, in which the insured stipulates to a substantial judgment against him in exchange for a promise from the plaintiff that she will not enforce that judgment against him, but rather pursue a bad faith action against his insurance company in his stead. When an insurer has agreed to defend its insured, it is "entitled to control the defense and to decide whether to litigate" the plaintiff's claim or settle. *Safeco Ins. Co. v. Superior Ct.*, 71 Cal.App.4th 782, 84 Cal.Rptr.2d 43, 47 (1999). If an insurer wrongfully refuses to settle the claim, the insured may bring a bad faith action against it. *Hamilton*, 117 Cal.Rptr.2d 318, 41 P.3d at 132. However, that bad faith action based on failure to settle does not accrue until an excess judgment is entered against him. *Id.* at 134. Until "judgment is actually entered, the mere possibility or probability of an excess judgment does not render

the refusal to settle actionable"; rather, the insurer is "allowed to proceed through trial to judgment." *Id.* at 134, 137 (internal quotation marks and citation omitted). By entering into a stipulated judgment while the insurer is defending, the insured wrests control of the litigation from the insurer and deprives the insurer of the opportunity to determine the insured's liability through trial. *Id.* at 133.

The *Hamilton* court refused to bind the insurer to the stipulated judgment entered into while the insurer was defending its insured because "the judgment provide[d] no reliable basis to establish damages resulting from [the insurer's] refusal to settle." *Id.* As the court pointed out, the insured entered into the stipulated judgment knowing that he would be "excuse[d] ... from bearing any actual liability from the [agreement]." *Id.* In other words, the concern is "whether [the] insured too easily is admitting liability, or is agreeing to pay more than its proportionate share of the plaintiff's loss." *Id.* at 135 (emphasis, internal quotation marks, and citation to the court of appeals omitted). Under such circumstances, the court concluded that the stipulated judgment simply could not serve as a benchmark for its insured's liability. *Id.*

The majority rejects the *Hamilton* rule essentially on two grounds. First, it "recognize[s] ... legitimate concerns regarding the possibility of fraud or collusion [between the plaintiff and the insured], as 'the existence and amount of the [insured's] liability is determined by the parties rather than by a neutral factfinder.'" Maj. op. at 123 (quoting *Old Republic*, 180 P.3d at 434). However, the majority finds that such concerns can be dealt with during the trial on whether the insurer refused to settle in bad faith, as the insurer may claim that the stipulated judgment was collusive or that the amount was unreasonable. Maj. op. at 122–23. The cases cited by the majority for this proposition, however, involve stipulated judgments entered into after the insurer refused to defend its insured or while the insurer was disputing coverage.[2] Under these circum-

---

**2.** *Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524, 527 (Iowa 1995) (insurer "willfully failed and refused to defend" its insured); *Miller v. Shugart*,

316 N.W.2d 729, 733 (Minn.1982) (insured did not violate his duty to cooperate by entering into a settlement with the plaintiff while insurer was

stances, the insured may enter into a settlement with the plaintiff to protect his own interests, as the insurer has essentially abandoned him and forfeited its right to demand that the liability case go to trial. *See Old Republic*, 180 P.3d at 433 (citing *Hamilton*, 117 Cal.Rptr.2d 318, 41 P.3d at 135); Note, *Judicial Approaches to Stipulated Judgments, Assignments of Rights, and Covenants Not to Execute in Insurance Litigation*, 47 Drake L.Rev. 853, 874–75 (1999). But "where, as here, the insurer has accepted defense of the claim, and might have prevailed at trial had the insured and the claimants not settled without the insurer's participation," the stipulated judgment cannot serve as a reliable measure of the insured's liability to the plaintiff. *Hamilton*, 117 Cal.Rptr.2d 318, 41 P.3d at 135 (emphasis omitted). Although the issues of reasonableness and collusion may be explored at the insurer's bad faith trial, maj. op. at 122–123, such a trial is not a substitute for a trial on the insured's liability. *Cf. Hamilton*, 117 Cal.Rptr.2d 318, 41 P.3d at 135 (finding that despite the fact that the stipulated judgment had been found to have been made in good faith, such a finding "cannot transform an agreed judgment . . . into a determination of the existence and extent of the insured's liability").

Second, the majority notes that "although California only recognizes the validity of settlement agreements involving stipulated judgments where an insurer breaches its duty to defend, and not when it breaches its duty to settle, . . . *we have made no such distinction in Colorado.*" Maj. op. at 122 (citing *Old Republic*, 180 P.3d at 433–34, for the proposition that Colorado requires "only that the insurer be found in breach of a duty to act in good faith toward its insured") (emphasis added). This statement is a mischaracterization of Colorado law. Not only does it ignore our duty-to-cooperate cases discussed above, it misstates our discussion in *Old Republic*. There, we described *Ham-*

*ilton*'s distinction between cases in which the insurer has agreed to defend its insured and where it has "abandon[ed]" its insured as "cogen[t]." *Old Republic*, 180 P.3d at 433. We went on to hold that the insurer could not be bound by the stipulated judgment because the insurer "conceded coverage and defended its insured" and because there were no bad faith claims pending against it. *Id.* at 433–34. While it was not necessary to rest our holding in *Old Republic* solely on the fact that the insurer was defending its insured, we certainly did not imply, contrary to the majority's suggestion, that such a distinction was not present in Colorado law or that we would find such a distinction unimportant in the future.[3]

Finally, I note that the majority addresses at length the issue of damages in a case such as this, adopting the "majority" rule that "an excess judgment alone is sufficient to establish actual damages for a claim of bad faith breach of the duty to settle." Maj. op. at 121–23 (relying heavily on *Carter v. Pioneer Mut. Cas. Co.*, 67 Ohio St.2d 146, 423 N.E.2d 188 (1981)). But the distinction between the "judgment rule" and the "prepayment rule," *id.*, is simply not relevant here. In *Carter*, the case had gone to trial and an excess judgment had been entered against the insured; there was no stipulated judgment, pretrial or otherwise. 423 N.E.2d at 190. Thus, the issue of whether a stipulated judgment could be enforced against an insurer who was defending the claim at the time was not raised or addressed. The majority's extensive discussion of damages does not answer the question of whether the stipulated judgment can be enforced against Mid–Century in the first place. I would hold that it cannot.

Today the majority holds that even if an insurer actively defends its insured, it is bound by a stipulated judgment entered into by the insured for which he will never be

---

disputing coverage); *Six v. Am. Family Mut. Ins. Co.*, 558 N.W.2d 205, 206 (Iowa 1997) (insurer disputed coverage based on whether defendant was "additional insured" under policy).

**3.** There is no question here that the stipulated judgment would not fall within the confines of a

so-called *Bashor* agreement, named after *Northland Insurance Co. v. Bashor*, 177 Colo. 463, 494 P.2d 1292 (1972). As the majority concedes, the agreement in *Bashor* was made after trial, and did not involve an assignment of claims against the insurer. Maj. op. at 117 n. 1.

liable. Because this holding contravenes Colorado law, I respectfully dissent.

I am authorized to say that Justice RICE and Justice COATS join in this dissent.