DC–10 ENTERTAINMENT, LLC, n/k/a
LLMJ, LLC, a Colorado corporation,
Plaintiff–Appellant,

v.

MANOR INSURANCE AGENCY, INC.,
a Colorado Corporation,
Defendant–appellee.

Court of Appeals No. 11CA2637

Colorado Court of Appeals,
Div. IV.

Announced February 14, 2013

City and County of Denver District Court No. 10CV8631; Honorable Michael A. Martinez, Judge.

Roberts Levin Rosenberg, P.C., Bradley A. Levin, Jeremy A. Sitcoff, Denver, Colorado, for Plaintiff–Appellant.

Hall & Evans, L.L.C., Michael W. Jones, Alan Epstein, Denver, Colorado, for Defendant–Appellee.

Opinion by JUDGE FOX

¶ 1 Plaintiff, DC–10 Entertainment, LLC (DC–10), appeals the trial court's summary judgment in favor of defendant, Manor Insurance Agency, Inc. (Manor). We reverse and remand for further proceedings.

## I. Background

¶ 2 Constadinos Kouremenos owned and operated DC–10, a nightclub and lounge. He obtained insurance coverage for DC–10 through Manor, an independent insurance broker that services multiple insurance companies. Manor had previously obtained insurance coverage for two other nightclubs owned and operated by Kouremenos. Through Manor, DC–10 procured a commercial general liability policy with Penn–Star Insurance Company (Penn–Star), and a liquor liability policy with Founders Insurance Company (Founders).

¶ 3 Heaven Henderson suffered injuries when she was physically assaulted by an unknown assailant on DC–10's premises. Henderson sued DC–10. DC–10 then submitted claims to Penn–Star and Founders for defense and indemnity coverage. Penn–Star denied coverage because its policy with DC–10 contained an "assault and battery exclusion." The policy with Founders also contained such an exclusion, but Founders agreed to provide DC–10 with a defense under a reservation of rights.

¶ 4 DC–10 settled with Henderson. Pursuant to the settlement agreement, DC–10 would pay Henderson $15,000, contributed by Founders, and an arbitration judge would determine any further damages. Additionally, DC–10 assigned Henderson its rights to any proceeds recovered in a negligence lawsuit against Manor, in exchange for Henderson's agreement not to execute on her judgment against DC–10. Following the arbitration judge's award to Henderson, a judgment on the award was entered against DC–10.

¶ 5 DC–10 sued Manor asserting, as relevant here, claims of negligence and negligent misrepresentation. DC–10 alleged that, based on its prior relationship with Manor and DC10's request for assault and battery

coverage, Manor had a legal duty to obtain appropriate insurance, including for assault and battery, and that Manor failed to inform DC–10 that its insurance would not cover an on-premises assault. The court granted Manor's motion for summary judgment on the ground that the settlement agreement was insufficient to establish that DC–10 incurred damages resulting from Manor's negligence and negligent misrepresentation.

## II. Standard of Review

¶ 6 An appellate court reviews de novo a trial court's grant of summary judgment. *Shelter Mutual Ins. Co. v. Mid–Century Ins. Co.*, 246 P.3d 651, 657 (Colo.2011). Summary judgment will be granted only where there are no genuine disputed issues of material fact. *Natural Energy Res. Co. v. Upper Gunnison River Water Conservancy Dist.*, 142 P.3d 1265, 1276 (Colo.2006). We view all facts in the light most favorable to the nonmoving party. *Id.*

## III. Settlement Agreement and Damages

¶ 7 Claims of negligence and negligent misrepresentation require a showing that the plaintiff suffered damages caused by the defendant's negligent actions or inactions. *See Keller v. Koca*, 111 P.3d 445, 447 (Colo.2005) (negligence); *Nelson v. Gas Research Institute*, 121 P.3d 340, 345 (Colo.App. 2005) (negligent misrepresentation). DC–10 contends that the trial court erred in determining that the settlement agreement was insufficient to establish that DC–10 incurred damages. We agree.

¶ 8 In *Northland v. Bashor*, the supreme court upheld the validity of an agreement where an insured agreed to pursue claims against its insurance provider and share any recovery with the original plaintiff. 177 Colo. 463, 465, 494 P.2d 1292, 1293 (1972). In exchange, the plaintiff agreed not to execute on the judgment against the insured's assets. Since that case, the term "*Bashor* agreement" has been used to describe

a settlement reached between opposing parties after a judgment has been obtained against the defendant. The prevailing party agrees not to execute on the judgment in exchange for the defendant's agreement not to appeal the judgment and instead to pursue claims against third parties (and share any recovery with the original plaintiff).

*Stone v. Satriana*, 41 P.3d 705, 708 n. 2 (Colo.2002). The term has also been used to describe an agreement where the defendant assigns a claim against the insurer to the plaintiff. *Old Republic Ins. Co. v. Ross*, 180 P.3d 427, 431 (Colo.2008).

¶ 9 DC–10 and Henderson's settlement agreement provides, in relevant part:

- DC–10 shall pay to Ms. Henderson the sum of $15,000, contributed by Founders, in partial settlement sought by Ms. Henderson in the Lawsuit.

- Any further damages arising from the claims in the Lawsuit, above the [$15,000 paid by Founders] shall be determined in a proceeding before [a designated arbitration judge].... The parties agree that [the judge's] damages determination shall be binding and non-appealable, and shall be entered as a judgment in the Lawsuit.

- DC–10 has previously initiated a proceeding against Manor [Insurance] to recover the full amount of the judgment obtained in the [Henderson] Lawsuit as well as all other damages resulting from Manor's conduct. That action, filed in the District Court for the City and County of Denver, Colorado Case No.2010CV8631, includes claims for negligence, negligent misrepresentation, and breach of fiduciary duty (hereinafter referred to as the "Negligence Action").

- DC–10 hereby assigns to Ms. Henderson all rights, title, and interest it may have to proceeds, if any, recovered in the Negligence Action in collection of the judgment entered against DC–10 in the Lawsuit. DC–10 specifically retains its

title and interest in, and the right to prosecute, claims for all other damages it has suffered due to Manor's wrongful conduct.

- Ms. Henderson shall be responsible for payment of costs incurred in the Negligence Action.

- The parties agree that no settlement will be reached in the Negligence Action without the express consent of all of the parties hereto. The parties also agree [not to] unreasonably withhold consent to settlement of the Negligence Action.

- Any recovery in the Negligence [Action], after deduction of attorney fees and costs, shall be distributed as follows:

  ○ Ms. Henderson shall receive the unpaid amount of the judgment in the lawsuit, including postjudgment interest, until fully paid;

  ○ DC–10 shall then be paid any compensatory damages after the full judgment amount, including post -judgment interest, has been paid; and,

  ○ DC–10 ... and Ms. Henderson ... shall each receive 50 percent of all punitive damages awarded.

- So long as DC–10 fully and in good faith performs its obligations under this Agreement, Ms. Henderson covenants and agrees not to, directly or indirectly, execute or otherwise attempt to enforce or collect on any judgment resulting from the Lawsuit against DC–10.

- In the event this Agreement, or any part of it, is determined to be unenforceable, no party shall have any rights to pursue any claims or collect any amounts from any other party as a consequence of that determination.

- The parties expressly intend that the validity of this contract shall be determined by application of the Colorado Supreme Court's decision in *Bashor v. Northland Ins. Co.*, [29 Colo.App. 81,] 480 P.2d 864 (1970), and *Nunn v. Mid–Century Ins. Co.*, 244 P.3d 116 ([Colo.] 2010).[sic]

¶ 10 The trial court determined that the agreement was similar to the agreement at issue in *Serna v. Kingston Enterprises*, where a division of this court affirmed the dismissal of a common law indemnity claim. 72 P.3d 376, 381 (Colo.App.2002). In that case, an employee, while driving for her employer, collided with another vehicle. *Id.* at 378. The passengers of the other vehicle sued the employee to recover for injuries sustained in the accident. *Id.* As part of a settlement agreement, the parties agreed to a consent judgment for stipulated damages, with the employee to pursue her indemnity claim against her employer. *Id.* at 382. The employee agreed to select the passengers' attorney to represent her in the indemnity claim, and to grant the passengers sole discretion to pursue, settle, or appeal. *Id.* In exchange, the passengers agreed not to execute against the employee on the consent judgment, to pay all attorney fees, costs, and expenses arising from the indemnity claim, and to share any funds recovered from the employer in excess of $1 million. *Id.*

¶ 11 The *Serna* division explained that the agreement was distinguishable from a valid *Bashor* agreement because there was no enforceable judgment against the employee, and "the only judgment against her [was] one to which she stipulated, along with conditions virtually ensuring her that it would never be enforced against her." *Id.* at 381. The division also observed that the agreement was "more akin to a profit-sharing agreement," than a *Bashor* agreement. *Id.*

¶ 12 Six years after *Serna*, the supreme court addressed the validity of pretrial stipulated judgments in *Old Republic*, 180 P.3d at 430–35. The court declined to hold that such judgments are per se unenforceable, because under some circumstances a stipulated judgment is a defendant insured's only viable recourse against an insurer that has acted in bad faith. *Id.* at 433. The court addressed the *Serna* division's concern that pretrial stipulated judgments are "profit-sharing" agreements, and concluded that the risk of collusion was justified in light of the relative position of the parties. *Id.* at 434. The

court explained that a stipulated judgment "is not binding on the insurer until after an adversarial proceeding before a neutral [fact finder], providing the insurer with an opportunity to advance its defense." *Id.* Ultimately, the court held the stipulated judgment in that case unenforceable because the insurer conceded coverage and defended the insured, and there was no finding of bad faith against the insurer. *Id.*

¶ 13 Two years after *Old Republic,* the supreme court clarified the law on pretrial stipulated judgments in *Nunn v. Mid–Century Insurance Co.,* 244 P.3d 116, 121–24 (Colo. 2010). The court concluded that, despite legitimate concerns regarding fraud or collusion, a pretrial stipulated judgment may be sufficient to establish actual damages for a bad faith failure to settle a claim. *Id.* at 123. The court explained that "the mere specter of fraud or collusion need not render all stipulated judgments unenforceable against an insurer, because the existence of fraud or collusion can be determined at trial like any other issue of fact." *Id.* The court also held that, even if the insured establishes actual damages for a bad faith failure to settle a claim, "the actual amount of damages for which an insurer will be liable will depend on whether the stipulated judgment is reasonable." *Id.* Thus, the insured bears the additional burden of proving that the stipulated judgment reasonably reflects the value of the underlying personal injury claim, and thus is the proper measure of damages for the bad faith claim against the insured. *Id.*

¶ 14 The logic in *Nunn* applies here just as well, where, from the insured's perspective, there is no practical difference between an insurance broker and an insurance carrier, because those seeking insurance enter both relationships "for the financial security obtained by protecting themselves from unforeseen calamities and for peace of mind." *Goodson v. American Standard Ins. Co.,* 89 P.3d 409, 414 (Colo.2004). Here, the parties did not stipulate to a damages award,[1] but

instead agreed that the damages be determined by an arbitration judge. Because the agreement does not contain a pretrial stipulated damages award, DC–10 does not bear the burden of proving the reasonableness of the judgment. *See id.* Instead, the burden shifts to Manor to prove that the damages award, as determined by the arbitration judge, was unreasonable. *See Metcalf v. Hartford Accident & Indem. Co.,* 176 Neb. 468, 476, 126 N.W.2d 471, 476 (1964) (insurer bears the burden of proving the unreasonableness of judgment awarded the injured party against the insured, where the judgment was determined by a trial court). In challenging the reasonableness of the damages award, Manor may also raise the affirmative defense of collusion or fraud. *See Nunn,* 244 P.3d at 123.

¶ 15 Because the reasonableness of the judgment and the existence of collusion or fraud—defenses Manor remains free to advance—are factual issues, the trial court erred in granting summary judgment.

## IV. Assignment of Proceeds

¶ 16 We next address, apparently as a matter of first impression, the enforceability of an assignment of proceeds of negligence claims against an insurance broker. We conclude that the assignment was valid.

¶ 17 "While the law favors assignability of rights generally, it does not allow assignments for matters of personal trust or confidence, or for personal services." *Roberts v. Holland & Hart,* 857 P.2d 492, 495 (Colo.App.1993). In *Roberts,* a division of this court held that a legal malpractice claim was not assignable because it involved matters of personal trust and confidence. *Id.* The division rested its decision, in part, on policy grounds, explaining that "[t]he assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and

---

1. The parties stipulated that Founders would pay Henderson $15,000. Founders received a release of any claims against it when it paid that sum to Henderson. Thus, DC–10 does not seek that portion of the judgment in damages from Manor.

transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty." *Id.* (quoting *Goodley v. Wank & Wank, Inc.,* 62 Cal.App.3d 389, 397, 133 Cal.Rptr. 83, 87 (1976)). Another division of this court held that a wrongful death claim is not assignable because such claims are "a creature of statute," providing a cause of action in favor of a limited class of designated persons who presumably have "personal and close relationship" with the decedent. *Espinosa v. Perez,* 165 P.3d 770, 773 (Colo.App.2006). However, the factors identified in *Roberts* and *Espinosa* are not present in the claims assigned here.

¶ 18 "Although not binding as precedent, we may look to decisions of other jurisdictions for persuasive guidance on matters that are of first impression to us." *People v. Weiss,* 133 P.3d 1180, 1187 (Colo.2006). The majority of jurisdictions upholds assignments of insurance claims accompanied by a covenant not to execute on a judgment. *See* Justin A. Harris, Note, *Judicial Approaches to Stipulated Judgments, Assignments of Rights, and Covenants Not to Execute in Insurance Litigation,* 47 Drake L.Rev. 853, 856–60 (1999). Of those jurisdictions approving of *Bashor*-type agreements, those that have addressed an insured's assignment of negligence claims against an insurance broker or agent have found such assignments valid. *See, e.g., McLellan v. Atchison Ins. Agency, Inc.,* 912 P.2d 559, 563–66 (Haw.Ct. App.1996) (holding that a party injured in an automobile accident could sue an insurance agent on an insured's assigned claim for negligence in failing to procure appropriate insurance, in exchange for the injured party's covenant not to execute upon a stipulated judgment); *Red Giant Oil Co. v. Lawlor,* 528 N.W.2d 524, 528–35 (Iowa 1995) (allowing a tort claimant to sue, as the insured's assignee, the insurer's agent for failure to procure the correct coverage, in return for the tort claimant's covenant not to execute on a stipulated judgment against the insured); *Stateline Steel Erectors, Inc. v. Shields,* 150 N.H. 332, 837 A.2d 285, 288–91 (2003) (permitting

construction contractors, in insured's name and as its assignees, to bring negligence and breach of contract claims against insurance agent for failing to procure adequate insurance liability); *see also Lageman v. Frank H. Furman, Inc.,* 697 So.2d 981, 983–85 (Fla. Dist.Ct.App.1997); *Kobbeman v. Oleson,* 574 N.W.2d 633, 635–37 (S.D.1998); *Tip's Package Store, Inc. v. Commercial Ins. Managers, Inc.* 86 S.W.3d 543, 544–45 (Tenn.Ct. App.2001). We agree with the conclusion reached by the majority of courts in other jurisdictions.

¶ 19 Further, in recognizing the established practice of assigning claims to third parties in the insurance context, the supreme court in *Nunn* described the "special nature" of the relationship between an insurer and an insured, as follows:

Although every contract contains an implied duty of good faith and fair dealing, insurance contracts are unlike ordinary bilateral contracts. Rather than entering into a contract to obtain a commercial advantage, insureds enter into insurance contracts "for the financial security obtained by protecting themselves from unforeseen calamities and for peace of mind...." Furthermore, insurance policies generally are not the result of negotiation due to the significant disparity in the bargaining power between the insurer and the insured. Therefore, as a result of the " 'special nature of the insurance contract and the *relationship* which exists between the insurer and the insured,' " in addition to liability for regular breach of contract, an insurer's bad faith breach of an insurance contract also gives rise to tort liability.

244 P.3d at 119 (citations omitted) (emphasis added) (quoting *Goodson,* 89 P.3d at 414).

¶ 20 Insureds enter into a relationship with an insurance broker or agent to obtain a particular form of insurance coverage. *See id.; Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.,* 739 P.2d 239, 243 (Colo.1987). For example, "[t]here is no question that an insurance broker or agent who agrees to obtain a particular form of insurance cover-

age for the person seeking such insurance has a legal duty to obtain such coverage or to notify the person of his failure or inability to do so." *Bayly, Martin & Fay, Inc.*, 739 P.2d at 243. Here, Manor owed a duty to DC–10 to obtain the insurance coverage that DC–10 requested. *Terry v. Avemco Ins. Co.*, 663 F.Supp. 39, 41 (D.Colo.1987) (applying Colorado law) ("Colorado courts have long recognized that an insurance broker or agency may be held liable for negligent delay or failure to obtain insurance: 'Where an insurance agency undertakes to secure specific coverage or leads a policyholder to believe certain coverage has been obtained, if the coverage is not included in the policy, it is liable for its negligence.' This same cause of action is also maintainable directly against an insurance company where, as here, no insurance broker is involved.") (citations omitted) (quoting *Pete's Satire, Inc. v. Commercial Union Ins. Co.*, 698 P.2d 1388, 1390 (Colo. App.1985), *aff'd sub nom. Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.*, 739 P.2d 239 (Colo.1987)); *but see Kaercher v. Sater*, 155 P.3d 437, 441 (Colo.App.2006) ("[A]gents have no continuing duty to advise, guide, or direct a client to obtain *additional* coverage.") (emphasis added).

¶ 21 Just as an insurer's failure to provide the protection contracted for by an insured may give rise to a bad faith claim in a failure to defend context, a broker's failure to obtain the type of coverage requested by an insured may, in appropriate circumstances, give rise to a negligence claim.[2]

¶ 22 In procuring insurance for a client, an insurance broker engages in an activity properly characterized as a commercial and business transaction. *See Troost v. Estate of DeBoer*, 155 Cal.App.3d 289, 202 Cal.Rptr. 47, 52 (1984) (explaining that the "unique factors" that give rise to an exception to the general rule of assignability are not present in negligence claims against bro-

kers and agents because "procurement of insurance through a broker or agent is a commercial transaction with intended beneficiaries beyond the client alone"); *see also Webb v. Gittlen*, 217 Ariz. 363, 174 P.3d 275, 279 (2008) ("Although the agent-client relationship has personal dimensions, it arises from a commercial transaction – the purchase of insurance."); *Esposito v. CPM Ins. Services, Inc.*, 50 Conn.Supp. 283, 922 A.2d 343, 352 (2006) ("The insurance agent-client relationship is a commercial relationship not comparable to the attorney-client relationship, shaped by centuries of tradition and jurisprudence."); *Associated Ins. Service, Inc. v. Garcia*, 307 S.W.3d 58, 63 (Ky.2010) (declining to extend the prohibition of assignment of legal malpractice claims to negligence claims against insurance agents because "the attorney's duty flows solely to the client, while the insurance agent operates under a co-existing duty of fidelity to his principal, the insurance company").

¶ 23 We perceive no reason to prohibit assignment of claims against an insurance broker where the claim arises from a commercial transaction and the insured has the same expectations of the insurance broker that he or she would have of the insurer.

¶ 24 Accordingly, we hold that DC–10's assignment of the proceeds from its negligence and negligent misrepresentation claims against Manor, its insurance broker, to Henderson, the injured third party, is enforceable.

## V. Sufficiency of Facts for Assault and Battery Coverage

¶ 25 Finally, Manor contends that DC–10's negligence and negligent misrepresentations claims fail as a matter of law because DC–10 did not present evidence that assault and battery coverage, if obtained, would have covered the alleged patron-on-patron assault in the underlying lawsuit. We

---

**2.** We note that the duty arising from a broker's relationship with an insured that gives rise to a negligence claim is distinct from the duty of good faith and fair dealing arising from an insured-

insurer relationship. *See Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 465–66 (Colo.2003); *Gorab v. Equity General Agents, Inc.*, 661 P.2d 1196, 1198 (Colo.App.1983).

may address this argument even though the trial court did not. *See Hunter v. Mansell,* 240 P.3d 469, 474 (Colo.App.2010) ("[O]n appeal, the moving party may abandon the trial court's rationale and assert an alternative theory, supported by the record, to affirm the judgment.").

¶ 26 "The burden of establishing the non-existence of a genuine issue of material fact rests with the movant." *Snook v. Joyce Homes, Inc.,* 215 P.3d 1210, 1218 (Colo.App. 2009). Manor's motion for summary judgment referenced in passing that, even if Manor had obtained "assault and battery coverage" for DC–10, such coverage would not have included Henderson's allegations about a patron-patron assault on DC–10's premises. But Manor failed to present evidence to support this position.

¶ 27 Manor's reply to DC–10's summary judgment response cites statements made by its president during deposition testimony that assault and battery coverage does not cover altercations between two patrons, and only covers an employee assaulting a patron. However, during his deposition, Manor's president acknowledged a letter, that he had not previously read, sent by Penn–Star to DC–10 denying coverage. Penn–Star wrote, "Though the complaint alleges bodily injury and other negligence which otherwise may be covered under the policy, the applicable commercial liability insurance policy contains an assault and battery exclusion." This statement suggests that, absent the assault and battery exclusion, DC–10's Penn–Star policy would have covered the assault in Henderson's complaint. Hence, because the availability of coverage sought by DC–10 remains a disputed factual question, Manor did not meet its burden of proof on this issue on its motion for summary judgment. *See White v. Jungbauer,* 128 P.3d 263, 264 (Colo. App.2005) ("The moving party bears the burden of showing that no genuine issue of material fact exists. . . . ").

¶ 28 The summary judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

JUDGE WEBB and JUDGE LICHTENSTEIN concur.