Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us. Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
May 24, 2021

**2021 CO 32**

**No. 19SC664, *Auto-Owners Ins. Co. v. Bolt Factory Lofts Owners Ass'n, Inc.* —
Intervention as of Right — *Nunn* Agreements — Insurance.**

The supreme court considers whether an insurer, who is defending its
insured under a reservation of rights, is entitled to intervene as of right under
C.R.C.P. 24(a)(2) where the insured enters into a *Nunn* agreement with a third-
party claimant, but rather than entering into a stipulated judgment, agrees with
the third party to proceed via an uncontested trial to determine liability and
damages. The court concludes that the insurer's interest in the litigation was not
impaired because the insurer may sufficiently protect its interest in a subsequent
proceeding. The court therefore holds that the insurer was not entitled to
intervene as of right under C.R.C.P. 24(a)(2). Accordingly, the supreme court
affirms the judgment of the court of appeals, albeit by different reasoning.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

### 2021 CO 32

### Supreme Court Case No. 19SC664
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 18CA1201

### Petitioner:

Auto-Owners Insurance Company,

v.

### Respondent:

Bolt Factory Lofts Owners Association Inc., a Colorado nonprofit corporation.

### Judgment Affirmed
*en banc*
May 24, 2021

**Attorneys for Petitioner:**
Spencer Fane LLP
Terence M. Ridley
Evan B. Stephenson
 *Denver, Colorado*

**Attorneys for Respondent:**
Burg Simpson Eldredge Hersh & Jardine, P.C.
Brian K. Matise
Nelson Boyle
Ronald M. Sandgrund
Mari K. Perczak
Thomas W. Henderson
Joseph F. Smith

*Englewood, Colorado*

**Attorneys for Amicus Curiae Colorado Defense Lawyers Association:**
Sweetbaum Sands Anderson PC
Marilyn S. Chappell
     *Denver, Colorado*

**Attorneys for Amicus Curiae The Colorado Trial Lawyers Association:**
Levin Sitcoff PC
Bradley A. Levin
Nelson A. Waneka
     *Denver, Colorado*

**Attorneys for Amicus Curiae United Policyholders:**
Taussig & Smith
John Taussig
     *Boulder, Colorado*

**JUSTICE MÁRQUEZ** delivered the Opinion of the Court.
**JUSTICE SAMOUR** dissents, and **CHIEF JUSTICE BOATRIGHT** and **JUSTICE HOOD** join in the dissent.

¶1    In this construction defects litigation, we consider a novel question: Where a defendant-insured enters into an agreement before trial assigning its rights to any future bad faith claims against its insurer to a third-party plaintiff, is the insurer entitled to intervene at trial under C.R.C.P. 24(a)(2) to exercise its "absolute right" to control the defense of its insured under a reservation of rights? Because the agreement here is functionally equivalent to a *Nunn* agreement, *see Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116 (Colo. 2010), and because the insurer's interest in the underlying construction defects litigation is not impaired by that agreement, we conclude that the insurer was not entitled to intervene as of right under C.R.C.P. 24(a)(2). Accordingly, we affirm the judgment of the court of appeals, albeit under different reasoning.

## I. Facts and Procedural History

¶2    In October 2016, Bolt Factory Lofts Owners Association ("Bolt Factory") initiated a construction defects lawsuit against several contractors. In turn, several defendants filed third-party complaints against various subcontractors, including Sierra Glass Company ("Sierra Glass"), which was insured by Auto-Owners Insurance Company ("Auto-Owners"). Auto-Owners accepted its obligation to defend Sierra Glass, subject to a complete reservation of rights.

3

¶3     Through a series of settlement agreements, Bolt Factory settled with all parties except Sierra Glass.[1]   Auto-Owners, acting on Sierra Glass's behalf, declined Bolt Factory's offer to settle for $1.9 million—an amount within policy limits.  Shortly thereafter, Sierra Glass retained independent counsel, and, without Auto-Owners' knowledge or permission, Bolt Factory and Sierra Glass entered into a *Nunn* agreement—"an agreement whereby the insured assigns its bad faith claims to the third party, and in exchange the third party agrees to pursue the insurer directly for payment of the excess judgment rather than the insured." 244 P.3d at 119.  Rather than enter into a stipulated judgment as the parties did in *Nunn*, however, Bolt Factory and Sierra Glass proceeded to trial.

¶4     At a pretrial conference, Bolt Factory and Sierra Glass informed the court of the *Nunn* agreement.  Bolt Factory explained that the parties anticipated that trial would last "approximately two days," during which Bolt Factory would call four witnesses to testify as to liability and damages.  The parties would then submit proposed findings of fact and conclusions of law for the court's consideration. Sierra Glass elaborated that "this method of proceeding . . . is part of an ultimate agreement" under which Sierra Glass "will probably not be posing a defense to

---

[1] At that point, Bolt Factory was proceeding against Sierra Glass directly after an assignment of claims.

4

those claims or assertions that are made in this case." Essentially, Sierra Glass explained, it would be "s[i]tting on [its] hands and not questioning or doing those sorts of things."

¶5 When Auto-Owners learned of the *Nunn* agreement, it moved to intervene as of right under C.R.C.P. 24(a)(2) in order to "protect[] its rights" and "to actively defend the claims asserted against its insured." Auto-Owners argued that it had an interest in the outcome of the litigation in that such litigation could potentially create an "obligation to pay damages, up to the policy limits, that are covered under the [p]olicy for which Sierra [Glass] is found liable." Moreover, Auto-Owners asserted, intervention was necessary to protect its interests, particularly given the non-adversarial nature of the impending trial.

¶6 Following a hearing,[2] the district court denied Auto-Owners' motion. The court expressed concern regarding the fairness of the proceeding called for by the *Nunn* agreement, speculating that the agreement would make it more difficult for Auto-Owners to contest any resulting factual findings, given that the proceeding would have "all of the trappings . . . and all the procedural protections of an actual

---

[2] The hearing on Auto-Owners' motion to intervene was held before Judge Elliff, rather than Judge Egelhoff, who presided over the bench trial. Judge Egelhoff recused himself from ruling on the motion after discovering a conflict with Auto-Owners.

trial." But under *Nunn*, the court explained, any such concerns may be addressed in a subsequent action. The court therefore concluded that the agreement between Bolt Factory and Sierra Glass was permissible under *Nunn*. The court also concluded that Auto-Owners was not entitled to intervene under C.R.C.P. 24(a)(2). Because Auto-Owners was defending under a reservation of rights, the court explained, its interest was contingent. Moreover, the court determined that Auto-Owners could sufficiently protect its interest by challenging its liability in a subsequent declaratory judgment or bad faith action.

¶7     The case proceeded to a bench trial. Bolt Factory delivered opening and closing statements, called four witnesses, and introduced numerous exhibits. Sierra Glass presented no defense. Following trial, the district court entered its findings of fact and conclusions of law, which largely mirrored the parties' proposed findings but included the court's own adjustments. The court entered judgment in favor of Bolt Factory and against Sierra Glass in the amount of $2,489,021.90.[3]

---

[3] This judgment ultimately gave rise to separate, ongoing litigation in federal court. Following entry of judgment, Bolt Factory sought a writ of garnishment against Auto-Owners, and Auto-Owners removed that action to federal district court. *See* Notice of Removal, Bolt Factory Lofts Owners Ass'n, Inc. v. 209 Kalamath Grp. LLC, No. 1:18CV01738 (D. Colo. July 9, 2018).

¶8     A division of the court of appeals affirmed, concluding that the district court properly denied Auto-Owners' motion to intervene. *Bolt Factory Lofts Owners Ass'n Inc. v. Auto-Owners Ins. Co.*, 2019 COA 121, __ P.3d __.   The division

---

Meanwhile, Auto-Owners filed a declaratory judgment action in federal district court seeking a declaration that (1) Auto-Owners did not owe any obligations or payments to Sierra Glass under the insurance policy; (2) Sierra Glass breached the policy by failing to cooperate with Auto-Owners; and (3) the state-court judgment obtained by Bolt Factory is not enforceable against Auto-Owners. *Auto-Owners Ins. Co. v. Bolt Factory Lofts Owners Ass'n, Inc.*, 398 F. Supp. 3d 808, 811 (D. Colo. 2019).  Bolt Factory and Sierra Glass asserted counterclaims for breach of contract, statutory unreasonable denial of payment of a benefit, and common law bad faith. *Id.* at 811.  Because of the pending state court appeal, the federal district court dismissed the action without prejudice for lack of ripeness. *Id.* at 816.

The U.S. Court of Appeals for the Tenth Circuit reversed, explaining:

Auto-Owners' claims do not depend on the state court suit.  The state court appeal involves the denial of Auto-Owners' motion to intervene to defend against Bolt Factory's assigned, third-party claims. . . . This declaratory judgment action, however, involves Sierra Glass's alleged breach of the insurance policy. . . . Auto-Owners' [c]omplaint does not contest Sierra Glass's liability or challenge Bolt Factory's damages.

*Auto-Owners Ins. Co. v. Bolt Factory Lofts Owners Ass'n, Inc.*, 823 F. App'x 686, 690–91 (10th Cir. 2020).  It remanded the case to the district court for further proceedings.

On remand, the parties agreed to consolidate the garnishment proceeding and declaratory judgment action. *See* Order Granting Joint Mot. to Consolidate Civil Related Proceedings, Bolt Factory Lofts Owners Ass'n, Inc. v. 209 Kalamath Grp. LLC, No. 1:18CV01738 (D. Colo. Dec. 1, 2020); Order Granting Joint Mot. to Consolidate Civil Related Proceedings, Auto-Owners Ins. Co. v. Bolt Factory Lofts Owners Ass'n, Inc., No. 1:18CV01725 (D. Colo. Dec. 1, 2020).  Trial is scheduled for November 2021. *See* Am. Order Setting Trial, Auto-Owners Ins. Co. v. Bolt Factory Lofts Owners Ass'n, Inc., No. 1:18CV01725 (D. Colo. Nov. 9, 2020).

7

explained that, "[w]here an insurer reserves the right to deny coverage, 'the insurer's interest in the liability phase of the proceeding is contingent on the resolution of the coverage issue.'" *Id.* at ¶ 14 (quoting *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 638 (1st Cir. 1989)). Because Auto-Owners had reserved the right to deny coverage, the division concluded that "its interest in the litigation was contingent on the liability phase of the proceedings." *Id.* at ¶ 15. The division thus held that Auto-Owners "failed to satisfy prong one of Rule 24(a)(2)," which requires a would-be intervenor to possess an interest in the litigation in order to intervene. *Id.* The division also rejected Auto-Owners' argument that the *Nunn* agreement nullified the liability phase of the proceeding, stating that "such agreements are allowed in Colorado" and that "Sierra Glass was entitled to protect itself in the face of [Auto-Owners'] potential denial of coverage and refusal to settle." *Id.* Finally, the division noted that Auto-Owners could sufficiently protect its interests in a subsequent proceeding. *Id.* at ¶ 15 n.6.

¶9     We granted Auto-Owners' petition for certiorari review.[4]

---

[4] We granted certiorari to consider the following issue:

> Whether an insurer is entitled to intervene under C.R.C.P. 24(a)(2) to exercise its "absolute right" to control the defense of its insured under a reservation of rights, where the defendant-insured entered into an agreement prior to trial assigning its rights to any future bad faith claims against the insurer to the third-party plaintiff.

8

## II. Analysis

¶10    We review de novo a trial court's denial of a motion to intervene as of right under C.R.C.P. 24(a)(2). *Feigin v. Alexa Grp., Ltd.*, 19 P.3d 23, 28 (Colo. 2001). We begin our review by outlining the requirements set forth in C.R.C.P. 24(a)(2) for intervention as of right. We then review *Nunn* agreements, including the circumstances under which such agreements are permissible, and conclude that the agreement between Bolt Factory and Sierra Glass is permissible under *Nunn*. We then address whether Auto-Owners is nonetheless entitled to intervene under C.R.C.P. 24(a)(2). Because Auto-Owners' interest in the litigation is not impaired by the *Nunn* agreement, we conclude that it is not entitled to intervene.

### A. Intervention as of Right Under C.R.C.P. 24(a)(2)

¶11    Under Rule 24(a)(2) of the Colorado Rules of Civil Procedure, a non-party is entitled to intervene as of right when it

> claims an interest relating to the property or transaction which is the subject of the action and [it] is so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect that interest, unless the [non-party's] interest is adequately represented by existing parties.

"Intervention as of right is a fact-specific determination," *Cherokee Metro. Dist. v. Meridian Serv. Metro. Dist.*, 266 P.3d 401, 404 (Colo. 2011), and courts should liberally interpret Rule 24(a)(2) "to allow, whenever possible and compatible with

efficiency and due process, issues related to the same transaction to be resolved in the same lawsuit and at the trial court level," *id.* (quoting *Feigin*, 19 P.3d at 26).

¶12 Rule 24(a)(2) imposes "three substantive requirements" for intervention as of right. *Feigin*, 19 P.3d at 28. First, the party seeking intervention must claim "an interest relating to the transaction that is the subject of the action." *Id.* Courts should not impose "'formalistic' constraints on the existence of an interest." *Cherokee Metro. Dist.*, 266 P.3d at 406 (quoting *Feigin*, 19 P.3d at 29). Instead, courts should use "a 'flexible approach' to determining whether a party has claimed such an interest," and "[t]he existence of an interest 'should be determined in a liberal manner.'" *Id.* at 404 (quoting *Feigin*, 19 P.3d at 29). In essence, the interest prong is "a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.* (quoting *O'Hara Grp. Denver, Ltd. v. Marcor Hous. Sys., Inc.*, 595 P.2d 679, 687 (Colo. 1979)).

¶13 Second, "the party seeking intervention must show that it is so situated that the disposition of the underlying action may as a practical matter impair its ability to protect its interest." *Id.* at 406. This prong is satisfied "if the disposition of the action . . . will prevent any future attempts by the applicant to pursue [its] interest." *Feigin*, 19 P.3d at 30. By contrast, "where there [are] alternative forums in which to bring a suit, [a party] is neither impaired nor impeded in [its] ability to protect [its] interests." *Id.*

10

¶14 Finally, the party seeking intervention must establish that its interest is not "adequately represented by existing parties." *Cherokee Metro. Dist.*, 266 P.3d at 407. A party satisfies this prong if it demonstrates that its interests are not represented at all or if the existing parties are adverse. *Feigin*, 19 P.3d at 31.

## B. *Nunn* Agreements

¶15 In Colorado, an insurer holds "the absolute right to control the defense of actions brought against [its] insured." *Farmers Grp., Inc. v. Trimble*, 691 P.2d 1138, 1141 (Colo. 1984); *see also Nunn*, 244 P.3d at 119 (explaining that the insurer "has exclusive control over the defense and settlement of claims"). This holds true even where the insurer defends its insured under a reservation of rights. *See Nunn*, 244 P.3d at 119; *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991); *Trimble*, 691 P.2d at 1141.

¶16 That said, we have acknowledged that where an insurer has acted unreasonably in defending its insured, the insured may take steps to protect itself, including by entering into an agreement with a third party. In *Northland Insurance Co. v. Bashor*, 494 P.2d 1292, 1293–94 (Colo. 1972), for example, we affirmed the legality and enforceability of a post-judgment settlement agreement under which an insured agreed to pursue a bad faith claim against its insurer and assign any resulting judgment to a third party. And in *Old Republic Insurance Co. v. Ross*, 180 P.3d 427, 433 (Colo. 2008), we considered a pretrial agreement involving a

covenant not to execute on a stipulated judgment; we declined to hold such an

agreement "per se unenforceable." *Id.*

¶17    We most recently considered such agreements in *Nunn*. There, an insured

and a third party entered into a pretrial settlement agreement through which

(1) the third party covenanted not to execute on a stipulated judgment, and (2) the

insured assigned its bad faith claims against its insurer to the third party. 244 P.3d

at 118. The third party then initiated an action against the insurer, alleging that

the insurer acted in bad faith by failing to accept a settlement offer within policy

limits. *Id.* The trial court dismissed this claim, reasoning that, by virtue of the

covenant not to execute, the insured would never face personal liability for the

excess judgment; thus, there were no damages to assign to the third party. *Id.* A

division of the court of appeals agreed. *Id.*

¶18    Upon review, we reversed and held that entry of judgment in excess of

policy limits against an insured is sufficient to establish damages for a bad faith

breach of an insurance contract claim against the insurer, even if the insured is

protected by a covenant not to execute. *Id.* at 122, 124. We first noted that the

insured generally is responsible for any damages in excess of policy limits. *Id.* at

119. But this rule is not absolute:

> [W]hen it appears that the insurer—who has exclusive control over
> the defense and settlement of claims pursuant to the insurance
> contract—has acted unreasonably by refusing to defend its insured or
> refusing a settlement offer that would avoid any possibility of excess

12

liability for its insured, the insured may take steps to protect itself from potential exposure to such liability.

*Id.*

¶19  We explained that one way for an insured to protect itself is through the use of "an agreement whereby the insured assigns its bad faith claims to the third party, and in exchange the third party agrees to pursue the insurer directly for payment of the excess judgment rather than the insured"—an agreement now known as a *Nunn* agreement. *Id.* We recognized that "this method raises concerns where . . . the judgment results from a pretrial stipulation between the insured and third party rather than an adversarial proceeding before a neutral factfinder." *Id.* at 119–20. Nevertheless, we ultimately concluded that "the risk of collusion may be tolerable in light of the relative positions of the parties." *Id.* at 120 (quoting *Old Republic*, 180 P.3d at 434).

¶20  Finally, we noted that "a pretrial stipulated judgment cannot be enforced against an insurer in the absence of a determination of bad faith." *Id.* However, we "left the door open for the enforceability of such a judgment in the event that an insured or an assignee of the insured successfully litigates a claim of bad faith." *Id.*

## C. Application

¶21  Turning to the present case, we conclude that the agreement between Sierra Glass and Bolt Factory is permissible under *Nunn*. It is not clear from the record

13

why, rather than stipulate to the amount of damages as permitted by *Nunn*, Sierra Glass and Bolt Factory chose to have the trial court determine those damages as well as Sierra Glass's liability. Doing so was not required under *Nunn*; indeed, proceeding in this manner (rather than simply entering into a stipulated judgment) required Bolt Factory to make the extra effort of proving its claims and risked that the trial court might disagree with its damages calculations.[5] In any event, the parties' rationale for proceeding in this manner ultimately makes little difference here. Faced with Auto-Owners' refusal to settle within policy limits, Sierra Glass took steps to protect itself by entering into an agreement with Bolt Factory — an agreement that included both an assignment of claims and a covenant not to execute. Such an agreement falls squarely within the ambit of *Nunn*.

¶22 Auto-Owners argues that the agreement between Bolt Factory and Sierra Glass differs meaningfully from the agreement at issue in *Nunn* because the uncontested trial here lent the imprimatur of the court to the judgment. Moreover,

_____

[5] The district court here accepted the damages calculation set forth in the parties' proposed findings of fact and conclusions of law. However, the court did not accept the proposed findings of fact and conclusions of law verbatim. Moreover, the court made clear that it conducted an independent analysis of the case, stating: "[A]ll findings of fact and conclusions of law made herein are based on what the [c]ourt finds to be a preponderance of admissible, credible, and persuasive evidence. The [c]ourt's findings of fact reflect the [c]ourt's assessment of credibility of the witnesses . . . ."

14

Auto-Owners contends that, should these agreements be permitted, such agreements will become the norm, completely subsuming insurance defense and necessitating subsequent coverage proceedings in every case.

¶23     Although the district court here agreed to this process, we note that courts are not required to do so.  Faced with such an agreement, a court may instead require the parties to enter into a standard *Nunn* agreement—that is, a court may require the parties to agree to a stipulated judgment, rather than proceed to an uncontested trial where the court itself determines damages.  Moreover, should a district court agree to an uncontested trial, it can mitigate any concerns about its role by building into its findings the one-sided nature of the trial.

¶24     Having concluded that the agreement between Sierra Glass and Bolt Factory was permissible under *Nunn*, we turn now to whether Auto-Owners nonetheless was entitled to intervene as of right under Rule 24(a)(2).

### 1.  Interest

¶25     The court of appeals concluded that Auto-Owners failed to satisfy prong one of the Rule 24(a)(2) inquiry because, in light of its reservation of rights, its interest in the litigation was contingent on the liability phase of the proceedings. *Bolt Factory*, ¶ 15.   In reaching this conclusion, the division relied almost exclusively on *Dingwell*.  *Id.* at ¶¶ 14–15 (citing *Dingwell*, 884 F.2d 629).  In that case, the U.S. Court of Appeals for the First Circuit held that an insurer who was

defending its insured under a reservation of rights failed to demonstrate a sufficient interest to intervene as of right under F.R.C.P. 24(a)(2) because "the insurer's interest in the liability phase of the proceeding [wa]s contingent on the resolution of the coverage issue." *Dingwell*, 884 F.2d at 638. According to the First Circuit, this conclusion "reflect[ed] the well-established policy that an insurer who reserves the right to deny coverage cannot control the defense of a lawsuit against its insured by an injured party." *Id.* at 639.

¶26 The division's reliance on *Dingwell* is misplaced. The First Circuit's approach simply does not reflect the "well-established policy" in Colorado. Instead, Colorado imposes on insurers a broad duty to defend, *Hecla Mining Co.*, 811 P.2d at 1089, and vests in insurers "the absolute right to control the defense of actions brought against the insured," *Trimble*, 691 P.2d at 1141; *see also Nunn*, 244 P.3d at 119 (explaining that the insurer "has exclusive control over the defense and settlement of claims"). An insurer does not lose this "absolute right" by defending under a reservation of rights. Indeed, we have encouraged the use of a reservation of rights where an insurer doubts coverage, stating "[t]he appropriate course of action . . . is to provide a defense to the insured under a reservation of its rights." *Hecla Mining Co.*, 811 P.2d at 1089.

¶27 Moreover, *Dingwell* is much broader than *Nunn* in that it rests merely on the insurer's reservation of rights. *Nunn*, however, requires more: An insurer must

either refuse to defend its insured or refuse a settlement offer within policy limits, thereby exposing its insured to the possibility of excess liability. Defending under a reservation of rights alone is insufficient, and the division erred to the extent it suggested otherwise.

## 2. Impairment

¶28 Regardless, the division correctly concluded that Auto-Owners was not entitled to intervene under Rule 24(a)(2) because its interest in the litigation was not impaired by the *Nunn* agreement. As the division explained, Auto-Owners "can sufficiently protect its interests in a subsequent declaratory judgment action regarding coverage." *Auto-Owners Ins. Co.*, ¶ 15 n.6. Indeed, Auto-Owners has already initiated a declaratory judgment proceeding to determine coverage under the policy. *See supra*, note 2.

¶29 Auto-Owners may also protect its interest by raising its claims and defenses in any bad faith action that Bolt Factory may bring against Auto-Owners pursuant to the assignment of claims under the *Nunn* agreement. Such an action "presents an adequate opportunity to test the issues of fraud and collusion," and "to test whether [Auto-Owners] could have prevailed at a trial on liability for the injury." *Nunn*, 244 P.3d at 123 n.7. A bad faith action also provides an opportunity to challenge the reasonableness of the judgment, and if the factfinder determines that

17

the judgment is unreasonable, it may alter the amount of the judgment. *See id.* at 123–24.

¶30 Auto-Owners argues that these options are inadequate due to the burden-shifting framework articulated in *DC-10 Entertainment, LLC v. Manor Insurance Agency, Inc.*, 2013 COA 14, 308 P.3d 1223. In that case, a division of the court of appeals held that the insured did "not bear the burden of proving the reasonableness of the judgment," but rather "the burden shift[ed] to [the insurer] to prove that the damages award . . . was unreasonable." *Id.* at ¶ 14, 308 P.3d at 1227. This was so, the division explained, because "the parties did not stipulate to a damages award, but instead agreed that the damages be determined by an" independent factfinder. *Id.* (footnote omitted).

¶31 It is questionable whether this burden-shifting framework is appropriate under any circumstances. But regardless, it does not apply here. A stipulated judgment "is not binding on the insurer until after *an adversarial proceeding* before a neutral factfinder, providing the insurer with an opportunity to advance its defense." *Old Republic*, 180 P.3d at 434 (emphasis added); *see also Nunn*, 244 P.3d at 123 (explaining that a "stipulated judgment will not be binding on the insurer until the insurer has had an opportunity to defend itself at trial"). Here, damages were not determined after an adversarial proceeding in which Auto-Owners had the opportunity to defend itself. Although the trial was held before a neutral

18

factfinder, it was effectively an uncontested proceeding. In this respect, the judgment entered in this case is akin to a stipulated judgment, and—like stipulated judgments entered pursuant to *Nunn* agreements—it is not binding on Auto-Owners until it has an opportunity to challenge the judgment and advance its defenses before a neutral factfinder.

### 3. Policy Considerations

¶32 Importantly, we conclude that allowing an insurer to intervene under these circumstances would undermine the purpose of *Nunn*, which, as discussed above, creates a mechanism by which an insured can protect itself in the face of an insurer's unreasonable refusal to settle within policy limits. Indeed, allowing intervention under the circumstances here would re-expose the insured to the very circumstances giving rise to the agreement in the first place. *See* Brief of Amicus Curiae The Colorado Trial Lawyers Association at 14–15.

¶33 We note that intervention under these circumstances could give rise to potential conflicts of interest. *See* Steven Plitt et al., 14A Couch on Ins. 3d § 202:18 (2020) ("A conflict of interest naturally exists between an insurer and an insured and between the insurer's attorney who represents the insured and the insured if defense of the insured is undertaken under a reservation of rights . . . ."). In preparing for trial, an insurer may, through its retained counsel, obtain information about its insured that the insurer may use to defeat the insured in a

19

subsequent declaratory judgment action regarding coverage. And at trial, an insurer may have a stronger interest in defending covered claims than in defending uncovered claims, or it may steer liability toward uncovered claims. An insurer also may have less interest in defending a claim that will exceed policy limits. Precluding intervention under the particular circumstances presented here avoids these potential conflicts of interest altogether and ensures that *Nunn*'s goal—protection of the insured—is achieved.

### III. Conclusion

¶34 For the foregoing reasons, we hold that Auto-Owners was not entitled to intervene as of right under C.R.C.P. 24(a)(2). Specifically, because Auto-Owners may pursue its claims and defenses in a subsequent declaratory judgment or bad faith action, its interest in the litigation was not impaired. Though we conclude that the agreement at issue is permissible under *Nunn*, we emphasize that courts are free to require the use of a stipulated judgment, rather than proceed with an uncontested trial. Accordingly, we affirm the judgment of the court of appeals.

**JUSTICE SAMOUR** dissents, and **CHIEF JUSTICE BOATRIGHT** and **JUSTICE HOOD** join in the dissent.

JUSTICE SAMOUR, dissenting.

¶35    Make-believe or pretend play is fine in daycare centers and elementary schools.  But it has no place in a court of law.

¶36    I write separately because, given our *adversarial* system of justice, I cannot condone the idea of a trial in which the parties agree in advance that one will put on its case while the other will sit on its proverbial hands and do nothing.  That's precisely what happened here.  Bolt Factory Lofts Owners Association ("Bolt Factory") and Sierra Glass Company ("Sierra Glass") executed an agreement that dictated Sierra Glass's performance—or, more accurately, lack of performance— at trial.  In exchange for Bolt Factory's stipulation to refrain from pursuing any recovery against Sierra Glass, Sierra Glass agreed to be a bump on a log at trial and assign any claims it had against Auto-Owners Insurance Company ("Auto-Owners") to Bolt Factory.  When Auto-Owners learned of the backstairs agreement on the eve of trial and attempted to jump into the fray to protect its interests, Sierra Glass staunchly opposed it and convinced the court to bar Auto-Owners from the arena.

¶37    At trial, Bolt Factory made an opening statement, called four witnesses, admitted other evidence by stipulation, and delivered a closing argument.  In stark contrast, and pursuant to the hole-and-corner agreement, Sierra Glass did not call a single witness, attempt to admit any other evidence, cross-examine witnesses,

1

raise objections, make motions, or deliver a closing argument. At one point, Sierra Glass actually announced that, pursuant to its agreement with Bolt Factory, it was "not presenting a defense." All the while, Auto-Owners was muzzled and had to watch from the sidelines.

¶38 Importantly, the trial court was made a participant in the bogus proceeding. As I see it, through their agreement, Sierra Glass and Bolt Factory used the court to achieve their objectives. At the end of the trial, they asked the court to enter a $2.5 million judgment along with their stipulated findings and conclusions. Based on the uncontested evidence presented by Bolt Factory, the court had no choice but to oblige.[1] As a result, the judgment now enjoys the court's imprimatur— purportedly the goal of the spurious trial.

¶39 Of particular concern, the trial court declared that "all findings of fact and conclusions of law" were based on "a preponderance of admissible, credible, and persuasive evidence" and reflected its "assessment of credibility of the witnesses." That type of post-trial declaration, which is not atypical, carries a lot of weight in our legal system—including on appeal. But it is problematic where, as here, the

_____

[1] With very minor, non-substantive adjustments, the trial court adopted the parties' stipulated findings and conclusions. Maj. op. ¶ 7 (acknowledging that the court's findings and conclusions "largely mirrored the parties'").

2

trial proceedings have been manipulated by the parties pursuant to a pretrial agreement.

¶40   The majority views the agreement between Bolt Factory and Sierra Glass as a "*Nunn* agreement." Maj. op. at ¶¶ 3, 21–24; *see also id.* at ¶ 1 (referring to the agreement as "functionally equivalent to a *Nunn* agreement"). That's simply wrong. Nowhere in *Nunn* did we sanction an agreement to conduct a sham trial. *See Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116 (Colo. 2010). Nor did *Nunn* license attorneys to make a mockery of our judicial system. *See id.* What we authorized in *Nunn* was simply "an agreement whereby the insured assigns its bad faith claims to the third party, and in exchange the third party agrees to pursue the insurer directly for payment of the excess judgment rather than the insured." *Id.* at 119. Nothing in *Nunn* blesses the proceeding that masqueraded as a trial here.

¶41   I do applaud the majority for making clear that, since the judgment entered following the fake trial cannot reasonably be viewed as resulting from "*an adversarial proceeding* before a neutral factfinder," maj. op. ¶ 31 (quoting *Old Republic Ins. Co. v. Ross*, 180 P.3d 427, 434 (Colo. 2008)), "it is not binding" until Auto-Owners "has an opportunity to challenge" it, including by advancing any available defenses in a good faith trial, *id.* I also commend the majority for determining that trial courts "are not required" to allow this type of simulated

3

proceeding.[2] *Id.* at ¶ 23. But then what's the point of permitting the proceeding in the first place? After today, I can't imagine that any attorney will be able to do what counsel for Sierra Glass and Bolt Factory insisted upon here. Had the trial court in this case been aware that it didn't have to agree to the pretend trial, it may have refused to do so. And, had counsel realized that any judgment after this artificial trial would carry no greater weight or effect than a judgment obtained pursuant to a true *Nunn* agreement, I see no reason why they would have opted for a trial to accomplish the same thing a simple signature would have.

¶42 Under these circumstances, I wish the majority would just come out and disapprove of the type of trial held here. A true *Nunn* agreement would have provided all the protection Sierra Glass required. There was no need for a faux proceeding. And certainly after today's decision, I see zero benefit to partaking in one. That counsel for Sierra Glass and Bolt Factory wanted to do things this way doesn't strike me as appropriate justification, especially given that Bolt Factory firmly maintains now that no prejudice befell Auto-Owners and no advantage inured to any party's benefit as a result of the feigned trial.

---

[2] Even if a trial court permits counsel to proceed as they did here, the majority authorizes the court to "mitigate any concerns" by incorporating into its findings the one-sided nature of the trial. Maj. op. ¶ 23.

4

¶43 Unfortunately, while the majority wisely disincentivizes the approach pushed by counsel for Sierra Glass and Bolt Factory, it leaves open the possibility that a future attorney will follow in their footsteps—assuming a trial judge is willing to permit it. I would nip this in the bud by categorically disallowing lay-down trials as contrary to our adversarial system of justice and offensive to the dignity of the courts.

¶44 Because I would conclude that the counterfeit trial held here was wholly improper, and because Auto-Owners' motion to intervene hinged on the prospect of such a trial being conducted, I would not reach the question of whether the trial court erred in denying Auto-Owners' motion to intervene pursuant to C.R.C.P. 24(a)(2). Instead, I would reverse the judgment of the court of appeals and remand with instructions to return the case to the trial court for further proceedings. In my view, Sierra Glass should have two choices on remand: enter into a true *Nunn* agreement with Bolt Factory or defend (through Auto-Owners' counsel) against Bolt Factory's claims in a good faith trial.

¶45 Accordingly, I respectfully dissent.

I am authorized to state that CHIEF JUSTICE BOATRIGHT and JUSTICE HOOD join in this dissent.

5